# EXHIBIT  12

No. T-1226-10

**FEDERAL COURT**

**ADMIRALTY ACTION *IN REM* AGAINST THE VESSEL "QE014226C010"**
**AND *IN PERSONAM***

BETWEEN:

OFFSHORE INTERIORS INC.

PLAINTIFF

AND:

WORLDSPAN MARINE INC., CRESCENT CUSTOM YACHTS INC.,
THE OWNERS AND ALL OTHERS INTERESTED IN
THE VESSEL "QE014226C010", and
THE VESSEL "QE014226C010"

DEFENDANTS

**AFFIDAVIT**

I, **CYNTHIA B. JONES**, Banker, of 500 Woodward Avenue, City of Detroit, State of Michigan, USA, MAKE OATH AND SAY AS FOLLOWS:

1.      I am Vice President, Special Assets Group, with Comerica Bank ("Comerica"), and as such have personal knowledge of the facts and matters hereinafter deposed to save and except where the same are stated to be made upon information and belief and where so stated I verily believe them to be true.

2.      I make this Affidavit pursuant to the Order of Roger Lafreniere, Case Management Judge pronounced August 29, 2011.

3.      This Affidavit supports a claim by Comerica against the Vessel "QE014226C010" (the "Vessel").

4.      Comerica is a Texas banking association incorporated in the United States of America.

5.      The Defendant, Worldspan Marine Inc. ("Worldspan") entered into a Vessel Construction Agreement (the "VCA") with Harry Sargeant III ("Sargeant") dated as of February 29, 2008 pursuant to which Worldspan as Builder was to construct and deliver the Vessel to Sargeant as Buyer.

6.      A copy of the VCA is attached hereto and marked as Exhibit **"A"** to this my Affidavit.

7.      Pursuant to paragraph 12.1 of the VCA Worldspan granted Sargeant a continuing first priority security interest in the Vessel including all work, materials, machinery and equipment relating to the Vessel to secure any amounts advanced or paid to Worldspan under the VCA, and further agreed to grant Worldspan a Ships Mortgage as additional security for monies paid or advanced to Worldspan under the VCA.

8.      Worldspan granted a ships mortgage to Sargeant (the "Mortgage"). The Mortgage was registered in the Ships Registry on May 14, 2008. A copy of the Mortgage is attached hereto and marked as Exhibit **"B"** to this my Affidavit.

9.      Pursuant to paragraph 8.1 of the VCA Worldspan agreed that Sargeant could assign the benefit of the VCA by way of security to any bank or financial institution.

10.     Comerica entered into a Construction Loan Agreement with Sargeant and others dated August 14, 2009. Under the Construction Loan Agreement Comerica agreed to make loans and advances to Sargeant for the purpose of funding the construction of the Vessel under the VCA, and Sargeant agreed to provide security to Comerica for such loans and advances including an assignment of the VCA and an assignment of the Mortgage.

11.     A copy of the Construction Loan Agreement is attached hereto and marked as Exhibit **"C"** to this my Affidavit.

12.     Pursuant to the terms of the Construction Loan Agreement Sargeant executed an Assignment of Security Agreement and Mortgage dated August 14, 2009 (the "Assignment"). Under the terms of the Assignment, Sargeant assigned all of his rights under the Mortgage and all

of his rights in respect of the security interest created in his favour under the VCA, to Comerica to secure loans and advances made by Comerica under the Construction Loan Agreement.

13.    A copy of the Assignment of Security Agreement and Mortgage is attached hereto and marked as Exhibit **"D"** to this my Affidavit.

14.    As further security Sargeant executed an assignment of insurance policies in respect of the Vessel, a copy of which is attached hereto and marked as Exhibit **"E"** to this my Affidavit.

15.    On August 14, 2009 Worldspan, by way of an executed Builders Acknowledgement and Consent, consented to the assignment by Sargeant of all his benefits, rights and titles under the VCA to Comerica and acknowledged that as of that date Sargeant had advanced $11,131,192.04 to Worldspan under the VCA, a copy of which is attached hereto and marked as Exhibit **"F"** to this my Affidavit

16.    The advances and loans made by Comerica to Sargeant were evidenced in part by a Promissory Note in the face amount of US$9,400,000 (the "Note").

17.    A copy of the Note is attached hereto and marked as Exhibit **"G"** to this my Affidavit.

18.    The Note was amended from time to time including by way of an Extension Letter dated June 8, 2011. Pursuant to the extension letter Sargeant acknowledges his indebtedness to Comerica in the amount of US$9,400,000 principal, plus interest of US$5,982.77 plus further interest after June 8, 2011 and costs and expenses incurred by Comerica. A copy of the June 8, 2011 letter is attached hereto and marked as Exhibit **"H"** to this my Affidavit.

19.    Comerica has advanced US$9,400,000 to Sargeant. In addition Comerica has incurred cost and expenses for attorney's fees and costs in the amount of US$ 74,732.83 plus CDN$ 66,722.45.

20.    As of the date of this Affidavit, Sargeant is indebted to Comerica for US$ 9,400,000, plus accrued interest to October 6, 2011 of US$ 29,913.86, costs and expenses as set out in paragraph

19 of this Affidavit, plus accruing interest at the rate provided in the Note and further costs and expenses that have or will be incurred.

21.    It is my understanding that the sum of US$20,682,520.92 has been advanced by Sargeant to Worldspan under the VCA. I base this understanding on a review of an Affidavit (the "Monger Affidavit") sworn and filed by Mr. Mervyn Monger, a representative of Sargeant. The Monger Affidavit was filed in the Supreme Court of British Columbia, Vancouver Registry, Action No. S112804. In the Monger Affidavit Mr. Monger deposes to the fact that US$20,682,520.92 has been advanced by Sargeant to Worldspan under the VCA, and attaches as Exhibit "BB" to the Monger Affidavit a schedule of those advances. Attached hereto and marked as Exhibit **"I"** to this my Affidavit is a copy of the Monger Affidavit without exhibits except for Exhibit "BB".

22.    I make this Affidavit in support of Comerica's claim to an interest in the Vessel as detailed in this Affidavit.


_____
**CYNTHIA B. JONES**


STATE OF MICHIGAN        )
                         )
COUNTY OF _WAYNE_____    )

~~The foregoing instrument was~~ acknowledged before me this _7TH_ day of ~~October, 2011~~
by Cynthia B. Jones the Vice ~~President of Comerica Bank, on behalf of the Bank,~~ who is known
~~personally to me or~~ provided a driver's license for identification.

SUBSCRIBED AND SWORN TO BEFORE ME ON OCTOBER 7, 2011

Notary's Signature: _Judith Ann Sutton_
Notary's Name: _JUDITH ANN SUTTON_
Notary Public, State of Michigan, County of _WAYNE_
My commission Expires: _03/29/2014_
Acting in the County of: _WAYNE_

JUDITH ANN SUTTON
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires Mar. 29, 2014

*/0/*

*2*

# CONSTRUCTION LOAN AGREEMENT

between

**HARRY SARGEANT, III** and **DANIEL SARGEANT**,
collectively, as the Borrower,

and

**COMERICA BANK,**
as the Lender

Dated as of August 14, 2009

This is Exhibit "C" referred to in the affidavit
of Cynthia B. Jones sworn before me at
Miller, Canfield, Paddock and Stone, P.L.C.
this 7th day of October, 2011

*Judith Ann Sutton*

**JUDITH ANN SUTTON**
**NOTARY PUBLIC - STATE OF MICHIGAN**
**COUNTY OF WAYNE**
**My Commission Expires Mar. 29, 2014**
ACTING IN THE COUNTY OF WAYNE

1

*102*

## CONSTRUCTION LOAN AGREEMENT

**THIS CONSTRUCTION LOAN AGREEMENT** (this "Agreement") is executed and entered into as of August 14, 2009, by and between **COMERICA BANK** (the "Lender"), and **HARRY SARGEANT, III**, and **DANIEL SARGEANT** (collectively, the "Borrower"). Each capitalized term used herein and not otherwise defined shall have the meaning ascribed thereto in Article 1 hereof.

### W I T N E S S E T H :

**WHEREAS,** Borrower has requested that Lender provide Borrower with a loan for the purpose of constructing an 142 foot motor yacht being constructed by Worldspan Marine, Inc. and identified as Builder's hull no QEO14226C010 ;

**WHEREAS,** Lender has agreed to provide such loan on the terms and conditions set forth in this Agreement;

**NOW, THEREFORE,** for mutual and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree with each other as follows:

### ARTICLE 1

### DEFINITIONS

**Section 1.1    Defined Terms.** The following terms when used in this Agreement, including its preamble and recitals, shall, except where the context otherwise requires, have the following meanings (such meanings to be equally applicable to the singular and plural forms thereof):

***"Advances"*** shall mean monies advanced on behalf of the Borrower under the Construction Loan  in accordance with the terms of Section 2.1 of this Agreement.

***"Agreement"*** shall mean this Loan Agreement, as the same may be amended and supplemented from time to time.

***"Applicable Law"*** shall mean, in respect of any Person, all provisions of constitutions, statutes, treaties, rules, regulations, guidelines, directives and orders of Governmental Authorities applicable to such Person, and all orders and decrees of all courts and arbitrators in proceedings or actions to which the Person in question is a party or by which it or any of its property is bound.

***"Assignment of Insurances"*** means that certain Assignment of Insurances (Construction Period) of even date herewith executed and delivered by Borrower, as assignor, in favor of Lender, as assignee, regarding the Borrower's assignment of Borrower's rights in insurance on the Vessel maintained by Builder.

***"Assignment of Builder's Mortgage Agreement"*** means that certain Assignment of Builder's Mortgage of even date herewith executed and delivered by Borrower, as assignor, in favor of Lender, as assignee, regarding the  Borrower's assignment of Borrower's mortgage lien and security interest in the Vessel.

***"Assignment of Vessel Construction Agreement"*** means that certain Assignment of Vessel Construction Agreement of even date herewith executed and delivered by Borrower, as

1

*103*

assignor, in favor of Lender, as assignee, regarding Borrower's assignment to Lender of Borrower's rights under the Vessel Construction Agreement.

*"Borrower"* shall mean Harry Sargeant, III, and Daniel Sargeant, and their permitted successors and assigns.

*"Builder"* shall mean Worldspan Marine, Inc., a British Columbia corporation.

*"Builder's Mortgage"* shall mean that certain Builder's Mortgage, executed by Builder dated May 6, 2008, and filed with Transport Canada on 10:25 am May 14, 2008 and assigned Record No. 3 in 2008, evidencing a first priority mortgage lien on hull no ŒO14226C010.

*"Business Day"* shall mean a day on which banks are not authorized or required to be closed in Fort Lauderdale, Florida.

*"Closing Check List"* shall mean the check list attached hereto as Exhibit A.

*"Collateral"* shall mean all personal property and other collateral from time to time assigned, mortgaged or pledged by the Borrower or any other Person to the Lender as security for the Loan.

*"Commitment"* shall mean Nine Million Four Hundred Thousand Dollars ($9,400,000).

*"Commitment Letter"* shall mean that certain letter addressed to Harry Sargeant and Daniel Sargeant, from Barry W. Shaw on behalf of Comerica Bank, dated August 6, 2009.

*"Construction Advances"* shall have the meaning assigned in Section 2.1.

*"Delivery Date"* shall mean the date title to the Vessel is delivered to Borrower by Builder, which shall occur not later than May 1, 2010 unless such date is extended in writing by Lender.

*"Demand"* shall mean Lender has made a demand for payment in full as permitted under the terms of the Note.

*"Dollars," "U.S. $," "$" and "U.S. Dollars"* shall mean the lawful currency of the United States of America.

*"Event of Default"* shall mean a Demand has been made by Lender and the Obligations of Borrower to Lender have not been satisfied within three (3) Business Days.

*"Governmental Authority"* shall mean any nation or government, any state or other political subdivision thereof, any municipality, any court and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government.

*"Guarantors"* shall mean any Person executing and delivering a Guaranty in connection with this Agreement.

*"Guaranty"* shall mean that certain Guaranty of even date herewith executed and delivered by each of the Guarantors in favor of Lender, and all amendments, replacements, modifications or restatements thereof.

2

*104*

**"Indebtedness"** shall mean, with respect, to any Person, (a) all items, except items of shareholders and partners equity or capital stock or surplus, which in accordance with generally accepted accounting principles would be included in determining total liabilities as shown on the liability side of a balance sheet of such Person, and (b) to the extent not otherwise included, all Capitalized Lease Obligations of such Person.

**"Indebtedness for Money Borrowed"** shall mean, with respect to any Person, all money borrowed and Indebtedness represented by notes payable and drafts accepted representing extensions of credit, all obligations evidenced by agreements, bonds, debentures, notes or other similar instruments (including, without duplication, reimbursement obligations in respect of letters of credit issued in connection with other Indebtedness), all Indebtedness upon which interest charges are customarily paid, and all Indebtedness issued or assumed as full or partial payment for property or services, whether or not any such notes, drafts, obligations or Indebtedness represent Indebtedness for money borrowed.  For purposes of this definition, interest which is accrued but not paid on the original due date or within any applicable cure or grace period as provided by the underlying contract for such interest shall be deemed Indebtedness for Money Borrowed.

**"Lender"** shall mean Comerica Bank, any Person to which all or a portion of any Loan is assigned or participated in accordance with Section 9.3 hereof and their permitted successors and assigns.

**"Lender's Office"** shall mean the office of the Lender located at 100 N.E. 3rd Avenue, Suite 100, Fort Lauderdale, FL 33301, or such other office or offices as may be designated pursuant to the provisions of Section 9.1 hereof.

**"Loan"** shall mean aggregate amount advanced by the Lender to the Borrower under the Note.

**"Loan Documents"** shall mean, without limitation, this Agreement, the Note, the Assignment of Vessel Construction Agreement, the Builder's Mortgage, the Assignment of Builder's Mortgage & Security Agreement, the Assignment of Insurances, any Guaranty, the Builder's Consent, the Commitment Letter, all legal opinions of counsel to the Borrower in connection herewith, and all other documents, instruments, certificates and agreements executed or delivered in connection with or contemplated by any of such instruments.

**"Material"** and **"Materially"** shall mean, with respect to any Person, material to the ability of such Person to perform its obligations under the Loan Documents.

**"Material Adverse Effect"** shall mean, with respect to any Person, any material adverse effect upon the business, assets, liabilities, financial condition, results of operations or business prospects of such Person, or the ability of such Person to own and operate its properties or to perform its obligations, such that such Person is not able to pay or perform all of its legal obligations owed to other Persons.

**"Obligations"** shall mean (i) all payment and performance obligations of the Borrower and all other third Persons under any Loan Document to or for the benefit of the Lender, (ii) all obligations under any swap agreements (as defined in 11 U.S.C. § 101) between Borrower and Lender, or its affiliates, whenever executed, and (iii) the obligation to pay an amount equal to the amount of any and all damage (other than lost profits) which the Lender may suffer by reason of a breach by the Borrower or any other Persons of any obligation, covenant or undertaking with respect to any Loan Document not otherwise included in clause (i).

3

513985v2 960766.0213

*105*

**"Person"** shall mean an individual, corporation, partnership, limited liability company, trust or unincorporated organization or a government, or any agency or political subdivision thereof.

**"Pre-Closing Change Orders"** shall mean the change orders which have been agreed to by Builder and Borrower (change order, no.'s 001-009, 011, 012) and outstanding change orders which are under consideration (change orders no. 010 and 013) and which were disclosed to Lender by Borrower on or before closing.

**"Progress Payment"** shall mean the monthly payments due Seller as described in Section 4.3 of the Vessel Construction Agreement.

**"Promissory Note" or "Note"** shall mean that certain promissory note of even date herewith executed and delivered by Borrower, as maker, in favor of Lender, as payee, in the original principal amount of $9,400,000.00.

**"Tax"** shall mean any tax, duty, levy, impost, assessment or other governmental charge imposed by any Governmental Authority.

**"Vessel"** shall mean the motor yacht described as Builder's hull number QEO14226C010 to be constructed pursuant to the terms of the Vessel Construction Agreement.

**"Vessel Construction Agreement"** shall mean that certain Vessel Construction Agreement dated February 29, 2008, between Builder and Borrower regarding the construction and purchase of the Vessel.

**"written" or "in writing"** shall mean any form of written communication, including written communication by telecopier or telex.

**Section 1.2    Interpretation.** Each definition of an agreement in this Article 1 shall include such agreement as modified, amended, restated or supplemented from time to time by the Lender and the Borrower, and except where the context otherwise requires, the singular shall include the plural and vice versa. Except where otherwise specifically restricted, reference to a party to this Agreement or any Loan Document includes that party and its successors and assigns. All terms used herein which are defined in Article 9 of the Uniform Commercial Code in effect in the State of Florida on the date hereof and which are not otherwise defined herein shall have the meanings as set forth therein.

**Section 1.3    Cross References.** Unless otherwise specified, references in this Agreement and in each other Loan Document to the term "hereof" or "herein" or to any Article or Section are references to this Agreement or such other Loan Documents or such Article or Section of this Agreement or such other Loan Document, as the case may be. Unless otherwise specified, references in any Article, Section or definition to the term "hereof" or "herein" or to any clause are references to this Agreement or such other Loan Document, as the case may be, or to such clause of such Article, Section or definition.

513985v2 960766.0213

*106*

## ARTICLE 2

## LOANS

**Section 2.1    Loan.**  Contemporaneously with the execution of this Agreement, Borrower shall execute and deliver to Lender the Promissory Note.  Lender agrees to make Advances ("Construction Advances") to Borrower for the purpose of funding Progress Payments under the Vessel Construction Agreement and paying closing costs associated with this Loan; provided that such Advances shall not exceed the Commitment. In the event that the outstanding  Loan at any time exceeds the Commitment, Borrower shall immediately repay theLoan in the amount of such excess.  Construction Advances shall be funded upon satisfaction of the conditions precedent set forth in Sections 2.6 (All Advances) and 2.7 (Individual Advances) of this Agreement.  In addition, upon completion of the Vessel and delivery of the Vessel by Builder to Borrower, the continuation of the Loan shall be subject to satisfaction of the conditions precedent in Section 2.8 of this Loan Agreement.  At Lender's discretion, Lender may fund construction Advances directly to Builder. Principal and interest on the Loan shall be repaid as described in the Note.  On the Delivery Date, Lender's obligation to fund Advances hereunder shall terminate, unless extended in writing by Lender.  Additionally, upon the Maturity Date set forth in the Note all outstanding principal, interest and any other amounts due Lender hereunder shall be due and payable.

**Section 2.2    Payment of Interest and Principal.**  The Loan shall be evidenced by, and shall be repayable in accordance with the terms and provisions set forth in theNote.  The Lender may open and maintain on its books in the name of the Borrower a loan receivable with respect to the Loan and any other amounts due the Lender under the Loan Documents and interest thereon. The Lender may debit the loan receivable for the principal amount of each Advance made by it under the terms of this Agreement and accrued interest thereon, and may credit such loan receivable for each payment on receivable of principal of or interest on the Loans or other amounts due under the Loan Documents and accrued interest thereon.  The records of the Lender with respect to the loan receivable maintained by it shall be presumed to be correct evidence of the Loans and other amounts due such Lender under the Loan Documents.

**Section 2.3    Withholding; Setoff.**  All payments of principal, interest and any other sums due under this Agreement and any other Loan Document shall be made in the amounts required without reduction, setoff or counterclaim by the Borrower, notwithstanding the assertion of any right of recoupment or setoff or of any counterclaim by the Borrower, and without any deduction or withholding by the Borrower for or onaccount of any present or future Taxes.

**Section 2.4    Application of Payments.**  Monies received by Lender from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal.  If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Lender.  If any payment received by Lender under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

**Section 2.5    Security for the Loan.**  The Loan shall be secured by a first priority security interest in the Vessel and related collateral through execution and delivery of the following Loan Documents at closing: (i) Assignment of Builder's Mortgage & Security Agreement, (ii) Assignment of Insurances, and (iii) Assignment of Vessel Construction Agreement.  In addition, the guarantors described in Section 25.1 of the Vessel Construction Agreement shall execute and deliver an

5

acknowledgement and consent in a form satisfactory to Lender allowing Lender to rely on and enforce such guaranty in accordance with the terms thereof if an Event of Default shall occur hereunder.

**Section 2.6    Conditions Precedent to Funding the Initial Construction Advances** . The Lender's obligation to fund the initial Construction Advance is subject to the following conditions precedent described below:

(a)    The Borrower's execution and delivery of all of the Loan Documents to which Borrower is a party and satisfaction of the conditions to funding the initial Advance set forth in Lender's Closing Check List delivered to Borrower.

(b)    Borrower shall deliver the Vessel Construction Agreement to Lender for its review and approval.

(c)    Payment in full to the Lender at closing of the Commitment Fee described in Section 2.8 below, and payment of all of the Lender's costs and expenses, including without limitation, payment of the Lender's legal fees and costs.

(d)    All representations and warranties of Borrower in this Agreement shall be true and correct in all material respects.

(e)    No Event of Default shall have occurred or be continuing, nor any material default which with the passage of time will constitute an Event of Default.

**Section 2.7    Conditions Precedent to Funding of Construction Advances.** In addition to meeting the conditions precedent in Section 2.6, Borrower shall satisfy the following conditions for each Construction Advance before Lender is obligated to fund a Construction Advance:

(a)    With respect to payments to Builder, Borrower shall deliver to Lender: (i) a written Claim Certificate (as defined in the Vessel Construction Agreement) and any other form of payment request submitted to Borrower from Builder, and (ii) a written advance request from Borrower to Lender indicating the amount of the proposed Advance, each with sufficient detail to justify the request and such other supporting documentation as may be required by Lender.

(b)    Prior to each Advance, the Vessel shall be inspected by a reputable marine surveyor or marine engineer (the "Marine Surveyor") selected by Borrower and approved by Lender, such approval to not be unreasonably withheld or delayed.  The Marine Surveyor shall deliver a written survey report to Lender, which confirms that as of the date of such survey, the Builder is entitled to all Progress Payments and other payments made by Borrower, or otherwise due to Builder under the terms of the Vessel Construction Agreement.

(c)    Borrower shall request Advances not more often that once per month.

**Section 2.8    Fees.**  Borrower shall pay to Lender a commitment fee equal to $12,500.00 which is due on the date of this Agreement.  The commitment fee is fully earned when paid and is non-refundable.

6

513985v2 960766.0213

*108*

## ARTICLE 3

## GENERAL REPRESENTATIONS
## AND COVENANTS

The Borrower hereby makes the following representations and warranties as of the date hereof and further makes the following covenants and agreements throughout the term hereof and so long as any Obligation remains outstanding:

**Section 3.1    Organization; Good Standing.**  Each Borrower is an individual residing in the State of Florida and has the legal capacity to execute and deliver the Loan documents to which he is a party.

**Section 3.2    Authorization and Enforceability.**  Borrower, has duly executed and delivered this Agreement and the Loan Documents, and this Agreement and the Loan Documents are, and will be and remain, valid, binding and enforceable against the Borrower in accordance with their terms.

**Section 3.3    Consents and Approvals.**  The Borrower has obtained, and will obtain and maintain, each and every consent, approval, authorization, permit, license, or similar action, and has effected, and will effect or maintain, any filing or registration or similar action, required by any Governmental Authority or other Person or necessary in connection with the ownership of his properties or the conduct of his businesses, including, without limitation, in connection with the execution, delivery and performance of this Agreement and the Loan Documents, and the consummation of the transactions contemplated hereby and thereby and is not in violation, and will not cause or permit any violation of any of the foregoing or of any valid rights of other Persons in any of the foregoing.

**Section 3.4    Legal Compliance.**  Borrower has complied, and will comply, in all material respects with all Applicable Laws, including, without limitation, maritime and shipping laws, and other laws, in connection with the ownership of its properties, including, without limitation, in connection with the execution, delivery and performance of this Agreement and the Loan Documents, the consummation of the transaction contemplated hereby and thereby.

**Section 3.5    Payment and Performance.**  The Borrower has paid and performed, and will pay and perform, each and every payment and performance obligation of any Applicable Law, regulation, judgment decree or order of any Governmental Authority, and of any material indenture, agreement or other instrument to which the Borrower is, or becomes, a party or by which its properties are, or become, bound, including, without limitation, the payment and performance of each and every Obligation in connection with this Agreement and the Loan Documents, the consummation of the transaction contemplated hereby.

**Section 3.6    No Event of Default.**  The Borrower is not in breach or default, and will not cause or permit the breach or default, and the execution, delivery and performance of this Agreement and the Loan Documents, the consummation of the transactions contemplated hereby will not result in the breach or default, and no event has occurred or failed to occur which has not been remedied or waived, the occurrence or non-occurrence of which constitutes, or with the passage of time or giving of notice or both would constitute, any breach or default, of any Applicable Law, regulation, judgment decree or order of any Governmental Authority, or of any material

7

*109*

indenture, agreement or other instrument to which the Borrower is, or becomes, a party or by which its properties are, or become, bound.

**Section 3.7     Taxes.** If required to file by applicable law, the Borrower has filed, and will file, all United States Federal income tax returns and all other tax returns by their respective due dates, including extensions, and the Borrower has paid, and will pay, all taxes due with respect to the Borrower pursuant to such returns or pursuant to any assessment received by the Borrower, except any such taxes or charges which are being diligently contested in good faith by appropriate proceedings and for which adequate reserves in accordance with generally accepted accounting principles have been set aside by the Borrower on its books. The charges, accruals and reserves on the books of the Borrower in respect of taxes or other governmental charges are, and will be and remain, adequate. The Borrower has paid, and will pay all taxes, fees and other charges in connection with the execution, delivery, recording, filing and registration of the Loan Documents as the same respectively become due or provisions for such payment have been, or will be, made to the satisfaction of the Lender in its sole discretion.

**Section 3.8     Solvency.** The Borrower is solvent on the agreement date as such term is defined under the Federal Bankruptcy Act as amended, and the Borrower's performance of its obligations hereunder shall not be deemed a fraudulent transfer within the meaning of the Bankruptcy Act or the Florida Fraudulent Transfer Act.

**Section 3.9.     Financial Covenants.** Borrower agrees to comply with the following covenants:

**(a)  Minimum Debt Service Coverage Ratio.** Borrower shall collectively, at all times, maintain a Debt Service Coverage Ratio of not less than 1.40 to 1.00. "Debt Service Coverage Ratio" shall mean the sum of Borrower's net cash flow, divided by the current interest and other amounts due on the Note. This covenant shall be tested quarterly.

**(b) Liquidity Covenant.** Borrower shall collectively, at all times, maintain Liquid Assets of not less than $2,000,000. "Liquid Assets" shall mean the sum of all cash, time deposits and marketable securities. This covenant shall be tested quarterly.

513985v2 960766.0213

## ARTICLE 4

### CONSTRUCTION RELATED
### REPRESENTATIONS AND COVENANTS

The Borrower hereby makes the following representations and warranties as of the date hereof and further makes the following covenants and agreements throughout the term hereof and so long as any Obligation remains outstanding:

**Section 4.1    Plans and Specifications.**    One complete set of final plans and specifications certified by Builder of the Vessel shall be submitted to and approved by Lender prior to closing.    Any material change orders evidencing deviations from the approved plans and specifications set forth in the Vessel Construction Agreement must be approved in advance by Lender in writing.    Additionally, if the aggregate cost of all change orders or deviations to the plans and specifications as evidenced by the original Vessel Construction Agreement exceeds $1,000,000, no further change orders or deviations shall be made without Lender's prior written consent which shall not be unreasonably withheld.

**Section 4.2    Insurance.**

(a)    Before any advances will be made under the Loan, Borrower shall furnish to Lender:

(i)    a Builder's Risk insurance policy or Certificate of Insurance covering the Vessel throughout construction until delivery to Borrower, naming Lender as a loss payee and/or additional insured, as Lender may require, containing a loss payable clause satisfactory to Lender and an agreement to notify Lender in writing at least thirty (30) days prior to any cancellation or reduction in coverage of such policy, covering such hazards, in such amounts, in such form, and issued by such company as shall have been approved by Lender in writing.    The policy shall include, or Borrower shall procure a separate policy providing, breach of warranty or mortgagee's interest coverage that will protect Lender notwithstanding failure of Borrower or Builder to comply with the terms of the builder's risk policy.

(ii)    A certificate from an insurance company satisfactory to Lender indicating that Borrower and Builder are covered by public liability and worker's compensation insurance to the satisfaction of Lender.

In the event any insurance required to be in force hereunder is provided for in an umbrella policy covering Borrower, then Borrower shall furnish a certificate of insurance confirming the applicable insurance coverage hereunder, plus a copy of the umbrella insurance policy.

(b)    In the event the Loan has not been repaid in full by the time coverage will terminate under the Builder's Risk policy, Borrower shall immediately procure and pay for an "All Risks" marine insurance policy containing a loss payable clause satisfactory to Lender, and an agreement to notify Lender in writing at least thirty (30) days prior to any cancellation or reduction in coverage of such policy, covering such hazards, in such amounts, in such form, and issued by such company as shall have been approved by Lender in writing.    The policy shall include, or Borrower shall procure a separate policy providing Breach of Warranty or Mortgagee's Interest coverage that

9

will protect Lender notwithstanding the failure of Borrower or any other party to comply with the terms of the policy. The original of said policy shall be delivered to Lender prior to the termination of coverage under the Builder's Risk policy. The "All Risk" marine insurance policy shall meet the additional requirements set forth in the Mortgage.

**Section 4.3    Equity Requirement.** In order to assure Lender that Borrower has sufficient funds available to pay all additional costs that may be incurred in the construction of the Vessel, Borrower will be required to supply additional funds over and above the amount of the Loan proceeds in an amount equal to any difference between the maximum principal amount of the Loan and the final total cost (including, without limitation, all extras and change orders and a sufficient reserve for funding of interest) to be incurred in connection with the construction of the Vessel. As a condition of each advance, if requested by Lender, Borrower shall prove to Lender's satisfaction that sufficient funds are available to complete the Vessel according to the approved plans and specifications, including any extras or change orders. In no event shall the outstanding Advances exceed 65% of the projected fair market value of the Vessel on an as completed basis per the Lender's valuation report, or 50% of the actual cost of the Vessel per the terms of the Vessel Construction Agreement.

**Section 4.4    Inspections.** As referenced above in Section 2.7(b), the Vessel is to be inspected by a marine surveyor prior to final delivery and acceptance of the Vessel. The Marine Surveyor shall provide to Lender satisfactory evidence (including such written reports, photographs or certificates as Lender may require) that the stage of construction entitles Builder to a particular Progress Payment and other payments made by Borrower to Builder through final delivery and that Builder has completed the Vessel in compliance with the standards required under the Vessel Construction Agreement. The appointment of the Marine Surveyor by Lender shall not be deemed to place any duty or responsibility upon Lender to inspect the Vessel or any obligation or liability upon Lender regarding the quality of construction or the absence of defects in the Vessel. Any surveys or other information obtained pursuant to this Agreement are obtained solely for the benefit of Lender, and may not be relied upon by Borrower.

**Section 4.5    Restriction on Secondary Financing and Sale of Vessel:** It is the intent of Lender that Borrower's rights under this Agreement and the Loan shall be personal since Lender has evaluated this Loan and has agreed to make this Loan based on the unique qualifications of Borrower, both financial and otherwise, successfully to complete the project. So long as this Agreement or any part of the Loan is outstanding, the Vessel shall remain free and clear of all encumbrances, liens, mortgages, or security interests, except those in favor of Lender and Borrower as set forth herein, and any liens or security interests created or granted by Builder that are in all respects inferior and subordinate to those in favor of Lender and Borrower. Borrower shall not, without the prior written consent of Lender, sell, donate, give, mortgage, encumber or otherwise transfer or convey all or any part of its interest in the Vessel. The occurrence of any of the foregoing prohibited events shall, at the option of Lender, constitute grounds for terminating this Agreement and for accelerating any and all sums unpaid under the Loan.

10

**ARTICLE 5**

**INFORMATION REPRESENTATIONS
AND COVENANTS**

The Borrower hereby makes the following representations and warranties as of the date hereof and further makes the following covenants and agreements throughout the term hereof and so long as any Obligation remains outstanding:

**Section 5.1    Financial Information.**    Borrower shall deliver the following financial information to Lender:

(a) **Personal Financial Statements.**    Each Borrower who is an individual shall deliver to Lender annually, within thirteen months of the previous statement date on file with Lender, Borrower's financial statement.   Said financial statement shall disclose all of Borrower's assets, liabilities, net worth, income and contingent liabilities, all in reasonable detail and acceptable to Lender and submitted on a form to be provided by Lender or on such other form acceptable to Lender, signed by Borrower and certified by Borrower to Lender to be true, correct and complete.

(b) **Tax Returns.**  Borrower shall deliver to Lender, within 30 days of filing, complete copies of federal and state tax returns, as applicable, together with all schedules thereto, including, without limitation, K-1 statements for all Partnerships and Sub Chapter S Corporations, each of which shall be signed and certified by Borrower to be true and complete copies of such returns.  In the event an extension is filed, Borrower shall deliver a copy of the extension within 30 days of filing.

(c) **Liquidity Statements.**  Borrower shall provide to the Lender annual liquidity statements showing current individual values for cash, time deposits, listed stocks and other immediately marketable securities.  Liquidity statements shall consist of Lender statements, brokerage statements and other documentation acceptable to Lender.

**Section 5.2    Litigation Notices.**  There is no action, suit, proceeding, investigation or inquiry affecting or instituted, pending or threatened against, the Borrower or any property or business of the Borrower.  The Borrower shall give to the Lender prompt written notice of the following events as to which the Borrower has received notice or otherwise become aware:

(a)        the commencement of all proceedings and investigations by or before any governmental body and all actions and proceedings in any court or before any arbitrator against or, to the extent known to the Borrower, in any other way relating adversely and directly to the Borrower, or any of its properties, assets or businesses (i) in which the recovery sought is in excess of $10,000 unless the claim is covered by insurance from a third party insurer (other than an Affiliate) and such insurer has affirmatively agreed that such claim is covered by such insurance (to the extent the loss exceeds deductible amounts, which deductible amounts shall not exceed $10,000 per occurrence); (ii) which, in the case of proceedings in any court or before any arbitrator, if adversely determined, could have a Material Adverse Effect; (iii) which, in the case of proceedings by or before any governmental body which in the reasonable judgment of the Borrower may be determined adversely to the Borrower, and if so determined could have a Material Adverse Effect, or (iv) which calls into question the validity of this Agreement or any other Loan Document;

11

113

(b)     any occurrence of an event which has a Material Adverse Effect on the Borrower;

(c)     any Default; any default by the Borrower under any material agreement (other than this Agreement) to which the Borrower is party or by which any of its properties is bound, including, without limitation, or the occurrence of any event which has a Material Adverse Effect on the Borrower, giving in each case the details thereof and specifying the action proposed to be taken with respect thereto; and

(d)     any material decrease in the amounts of insurance coverage maintained by the Borrower or Builder from that existing as of the date hereof.

**Section 5.3     Additional Information.**  The Borrower shall furnish to the Lender, within five (5) Business Days of any request therefor, such additional information as the Lender may reasonably request.

**Section 5.4     Accuracy and Completeness of Information.**  All information, reports, prospectuses, notices and other papers and data relating to the Borrower and furnished by or on behalf of the Borrower to the Lender were, and will be, at the time furnished, complete and correct in all material respects.  None of such information, reports, prospectuses, notices and other papers and data contains, or will contain, any material misstatement of fact or omits, or will omit, to state a material fact or any fact necessary to make the statements contained therein not materially misleading.

114

## ARTICLE 6

## NEGATIVE REPRESENTATIONS
## AND COVENANTS

The Borrower hereby makes the following representations and warranties as of the date hereof and further makes the following covenants and agreements throughout the term hereof and so long as any Obligation remains outstanding:

**Section 6.1    Amendment and Waiver.**  The Borrower has not entered into, and shall not cause or permit, any amendment of, or, agree to or accept or consent to any waiver of any of the provisions of the Vessel Construction Agreement.

**Section 6.2    No Additional Indebtedness.**  Other than the Loan evidenced hereby, the Borrower is not, and shall not create, incur, assume, cause or permit itself to become, directly obligated for any Indebtedness for Money Borrowed without the Lender's prior written consent.

**Section 6.3    No Liens.**  The Borrower is not, and shall not create, incur, assume, cause or permit himself to become, directly or contingently obligated upon any mortgage, deed of trust, lien, security interest, hypothecation, assignment, deposit arrangement or other preferential arrangement, charge or other encumbrance (including, without limitation, any conditional sale or title retention agreement or finance lease) of any nature upon or with respect to the Vessel, whether now owned or hereafter acquired, other than the liens created in favor of Lender under the Loan Documents and a second priority lien in favor of Builder and Builder's floor plan lender during the construction of the Vessel.  The Borrower has not, and shall not file any UCC financing statement which names as debtor the Borrower or any security agreement other than a Loan Document permitting any secured party thereunder to file such financing statement.

**Section 6.4    Material Adverse Effect.**  There has not occurred since the end of the most recent fiscal year of the Borrower, and the Borrower shall not cause or permit to exist or occur, any event, fact or situation which has had or could reasonably be expected to have a Material Adverse Effect.

13

513985v2 960766.0213

# ARTICLE 7

## DEMAND; REMEDIES

**Section 7.1    Demand .** As described in the Note, the Obligations are immediately due and payable on demand by Lender.

**Section 7.2    Remedies.** If a demand for immediate payment in full is made by Lender

(a)    All principal and interest on the Loan and the Note and all other amounts owed under this Agreement or the Note shall thereupon and concurrently therewith become due and payable, and the Commitment shall forthwith terminate, all without any action by the Lender, or the holders of the Note, or any of them, and without presentment, demand, protest or other notice of any kind, all of which are expressly waived, anything in this Agreement or in the Note to the contrary notwithstanding.

(b)    The Lender may exercise all of the post-default rights granted to it under the Loan Documents or under Applicable Law.

(c)    The rights and remedies of the Lender hereunder shall be cumulative and not exclusive.

# ARTICLE 8

## MISCELLANEOUS

**Section 8.1    Notices.**

(a)    All notices and other communications under this Agreement shall be in writing and shall be deemed to have been given (i) three (3) Business Days after deposit in the mail, designated as certified mail, return receipt requested, postage-prepaid; or (ii) one (1) Business Day after being entrusted to a reputable commercial overnight delivery service for overnight delivery; or (iii) one (1) Business Day after delivery via facsimile provided such notice is confirmed by a notice described in (i) or (ii) above. All notices and other communications under this Agreement shall be given to the parties hereto at the following addresses:

(iii)    If to the Borrower, to him at:

Harry Sargeant, III
Daniel Sargeant
3020 North Military Trail, Suite 100
Boca Raton, FL 33431

14

with a copy to:

Alley, Maass, Rogers & Lindsay, P.A.
340 Royal Poinciana Way, Suite 321
P.O. Box 431
Palm Beach, FL  33480-0431
Attn:  Robb R. Maass, Esq.

(ii)     If to the Lender, to it at:

Comerica Bank
100 N.E. 3rd Avenue, Suite 100,
Fort Lauderdale, FL 33301
Attn: Barry W. Shaw, Vice President

with a copy to:

Tripp Scott, P.A.
110 S.E. 6th Street, 15th Floor
Fort Lauderdale, FL 33301
Attention:  Gregory A. McLaughlin, Esq.

Copies shall be provided to persons other than parties hereto only in the case of notices under Article 8 hereof.  Failure to provide copies of notices given hereunder to parties which are not parties to this Agreement shall not effect the validity of a notice which is otherwise properly given.

(b)     Any party hereto may change the address to which notices shall be directed under this Section 8.1 by giving ten (10) days written notice of such change to the other party.

**Section 8.2    Expenses.**  The Borrower agrees promptly to pay:

(a)     consistent with the Commitment Letter or as otherwise agreed to by Borrower, all reasonable out-of-pocket expenses of the Lender in connection with the preparation, negotiation, execution and delivery of this Agreement and the other Loan Documents, and the transactions contemplated hereby and thereby, which in each case shall include out-of-pocket expenses and fees of counsel to (which shall include any in-house counsel), and experts, agents and consultants of, the Lender, including, without limitation, all such costs, expenses and fees on trial, on appeal or in bankruptcy or other proceedings.

(b)     all reasonable out-of-pocket costs and expenses incurred by Lender to third party vendors directly relating to the administration of the transactions contemplated in this Agreement or the Loan Documents, including any assignments of the Loans, the consideration, preparation, negotiation, execution and delivery of any proposed waiver, amendment or consent by the Lender relating to this Agreement or the other Loan Documents, all actions and activities relating to the Collateral, the creation, perfection or protection of any liens, and the protection, collection, enforcement and obtaining performance of this Agreement and the Loan Documents, which in each case shall include reasonable out-of-pocket expenses and fees of counsel to (which shall include any in-house counsel), and experts, agents and consultants of, the Lender, including, without limitation, all such costs, expenses and fees on trial, on appeal or in bankruptcy or other proceedings.

15

(c)      all reasonable out-of-pocket costs and expenses in connection with any Default, any enforcement of this Agreement or the Loan Documents, any restructuring, refinancing or "work out" of the transactions contemplated by this Agreement or the Loan Documents or any insolvency proceeding, and of obtaining performance under this Agreement or the Loan Documents, and all out-of-pocket costs and expenses of collection if any default is made in the payment of the Note, including, without limitation, all out-of-pocket expenses in connection with sale or disposition of any collateral for the Obligations, which in each case shall include out-of-pocket expenses and fees of counsel to (which shall include any in-house counsel), and experts, agents and consultants of, the Lender, including, without limitation, all such costs, expenses and fees on trial, on appeal or in bankruptcy or other proceedings.

(d)      all transfer, stamp, documentary, excise, property, registration, recordation and other similar taxes, assessments and charges levied by or payable to any Governmental Authority in respect of this Agreement, any Loan Document, any collateral for any obligations or any document referred to in this Agreement or any other Loan Document.

**Section 8.3     Assignment.**

(a)      *By the Borrower.* The Borrower may not assign or transfer any of its rights or obligations hereunder or under the Note or under any Loan Document without the prior written consent of the Lender in its sole discretion.

(b)      *By the Lender.*   The Lender may, at any time, issue participations in, and/or sell, assign, transfer or otherwise dispose of, its rights and obligations under this Agreement, the Note and the Loan Documents.  The Borrower agrees to reasonably assist Lender in Lender's efforts to assign or issue participations in this transaction if requested by the Lender.

**Section 8.4     Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, but all such separate counterparts shall together constitute but one and the same instrument.

**Section 8.5     Governing Law.**   This Note shall be governed by and construed in accordance with the internal laws of the State of Florida, including all matters of construction, validity and performance.

**Section 8.6     Severability.**   Any provision of this Agreement which is prohibited or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof in that jurisdiction or affecting the validity or enforceability of such provision in any other jurisdiction.

**Section 8.7     Headings.**  Headings used in this Agreement are for convenience only and shall not be used in connection with the construction or interpretation of any provision hereof.

**Section 8.8     Entire Agreement.**  Except as otherwise expressly provided herein, this Agreement, together with each of the Loan Documents, embody the entire agreement and understanding among the parties hereto and thereto and supersede all prior agreements, understandings, and conversations relating to the subject matter hereof and thereof.  The Borrower represents and warrants to the Lender that it has read the provisions of this Section and discussed the provisions of this Section and the rest of this Agreement and the Loan Documents with counsel for the Borrower, and the Borrower acknowledges and agrees that the Lender is expressly relying

16

upon such representations and warranties of the Borrower (as well as the other representations and warranties of the Borrower set forth in this Agreement and the Loan Documents) in entering into this Agreement and the Loan Documents.

**Section 8.9    Amendment and Waiver.** Neither this Agreement nor any Loan Documents, nor any term hereof or thereof may be amended orally, nor may any provision hereof or thereof be waived orally but only by an instrument in writing signed by the Lender and, in the case of an amendment, by the Borrower.

**Section 8.10   Other Relationships.** No relationship created under this Agreement or under any Loan Document shall in any way affect the ability of the Lender to enter into or maintain business relationships with the Borrower and its Affiliates beyond the relationships expressly contemplated by this Agreement and the Loan Documents.

**Section 8.11   Interpretation.** Should any provision of this Agreement or a Loan Document require a judicial interpretation, it is agreed that the judicial body interpreting or construing this Agreement or such Loan Document shall not apply the assumption that the terms of this Agreement or such Loan Document shall be more strictly construed against one party by reason of the rule of legal construction that an instrument is to be construed more strictly against the party which itself or through its agents prepared the agreement.  The Lender and the Borrower acknowledge and agree that they and their attorneys and agents have each participated equally in the negotiation and preparation of this Agreement and the Loan Documents.

**Section 8.12   Survival.** All representations and warranties made under this Agreement or any Loan Document and all statements, certifications and other information provided in or pursuant to this Agreement or any Loan Document shall be deemed to be made, and shall be true and correct, throughout the term hereof and so long as any Obligation remains outstanding, except to the extent previously fulfilled in accordance with the terms hereof and except to the extent that by their respective terms such representations and warranties relate solely to a prior date.   All representations and warranties made under this Agreement shall survive six (6) months after the satisfaction of all obligations of Borrower to Lender, and shall not be waived by, the execution hereof by the Lender, any investigation or inquiry by the Lender.

**Section 8.13   Time of the Essence.** Time is of the essence as to the Loan Documents.

513985v2 960766.0213

119

## ARTICLE 9

### WAIVER OF JURY TRIAL

**Section 91    WAIVER OF JURY TRIAL. WAIVER OF JURY TRIAL.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, EACH OF BORROWER BY EXECUTION HEREOF AND LENDER BY ACCEPTANCE HEREOF, KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT EACH MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED ON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LOAN AGREEMENT, THE LOAN DOCUMENTS OR ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONNECTION WITH THIS LOAN AGREEMENT, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY WITH RESPECT HERETO. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO ACCEPT THIS LOAN AGREEMENT. EACH OF THE PARTIES AGREES THAT THE TERMS HEREOF SHALL SUPERSEDE AND REPLACE ANY PRIOR AGREEMENT RELATED TO ARBITRATION OF DISPUTES BETWEEN THE PARTIES CONTAINED IN ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR AGREEMENT HERETOFORE EXECUTED IN CONNECTION WITH, RELATED TO OR BEING REPLACED, SUPPLEMENTED, EXTENDED OR MODIFIED BY, THIS LOAN AGREEMENT.

[Remainder of page intentionally blank]

18

120

**IN WITNESS WHEREOF**, the parties hereto have executed this Construction Loan Agreement or caused it to be executed under seal by their duly authorized representatives, all as of the day and year first above written.

**"Lender"**

**COMERICA BANK**

By: _____

Name: Barry W. Shaw

Title:    Vice President

**"Borrower"**

By: _____

Name: Daniel Sargeant, as attorney-in-fact for Harry Sargeant, III

By: _____

Name: Daniel Sargeant

19

121

3

## ASSIGNMENT OF SECURITY AGREEMENT & MORTGAGE

**THIS ASSIGNMENT OF SECURITY AGREEMENT & MORTGAGE** (this "Assignment") made as of August 14, 2009, by **HARRY SARGEANT, III** (hereinafter the "Secured Party") in favor of **COMERICA BANK** (hereinafter the "Assignee").

## W I T N E S S E T H :

A.    A. Worldspan Marine, Inc. ("Builder") and Mortgagee are parties to that certain Yacht Construction Agreement dated February 29, 2008 under the terms of which Builder is constructing a 142 foot motor yacht identified in such agreement as Builder's hull no QEO14226C010

B.    As security for Builder's obligations to Mortgagee, under the terms of the Vessel Construction Agreement Builder granted to Mortgagee (1) a first priority ship mortgage lien on the Vessel, as evidenced by that certain Builder's Mortgage executed by Builder in favor of Mortgagee and filed with Transport Canada and entered in the record book on May 14, 2008, as Mortgage "A" and assigned record no. 3 in 2008, a copy of which is attached hereto as "Exhibit A" (the "Mortgage"), and (2) a security interest in the collateral described in that certain Financing Statement .filed in the British Columbia Personal Property Registry on May 1, 2008 and designated base registration no. 334150E, a copy of which is attached hereto as "Exhibit B". (the "Financing Statement"). The security interest created by the Vessel Construction Agreement and perfected by the Financing Statement is referred to herein as the "Personal Property Collateral".

C.    Assignee will extend credit to Secured Party under the terms of that certain promissory note (the "Note") of even date herewith in the original principal amount of Nine Million Four Hundred Thousand ($9,400,000) subject to among other things, Secured Party assigning to Assignee its rights under the Security Agreement to secure Secured Party's obligations to Assignee under the Note.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Secured Party hereby covenants and agrees in favor of the Assignee as follows:

## ARTICLE I

Section 1.01.    **Assignment of Rights by Secured Party.**    Secured Party hereby assigns, transfers, delivers, pledges, mortgages, charges, grants and conveys to Assignee all of the Secured Party's right, title and interest in and to the Mortgage and the Personal Property Collateral, and grants a continuing security interest in, and acknowledges and agrees that Assignee has and shall continue to have a continuing security interest in, (a) all right, title, interest and claim of the Secured Party, but none of the obligations, in, to and under the Mortgage and Personal Property Collateral, and (b) all proceeds of any and all of the foregoing (all of the foregoing rights, interests, properties, privileges described in clauses (a) and (b) above assigned and in which a security interest is granted pursuant hereto being hereinafter collectively called the "Collateral").

Section 1.02.    **Payments.**    The Secured Party hereby authorizes any party at any time holding any funds due the Secured Party under the terms of the Mortgage or the Vessel Construction Agreement and constituting part of the Collateral to pay all such sums due and to become due under the terms of the Mortgage or the Vessel Construction Agreement or in respect of or on account of the Collateral directly to the Assignee to the extent of the Assignee's interest therein, and agrees that such deliveries and payments to the Assignee as

JUDITH ANN SUTTON
NOTARY PUBLIC - STATE OF MICHIGAN
514071v2 960766.0213    COUNTY OF WAYNE
My Commission Expires Mar. 29, 2014
ACTING IN THE COUNTY OF WAYNE

1    This is Exhibit "D" referred to in the affidavit of Cynthia B. Jones sworn before me at Miller, Canfield, Paddock and Stone, P.L.C. this 7th day of October, 2011

Judith Ann Sutton

aforesaid shall be a good receipt and acquittance to the Secured Party to the extent so made.  All amounts received by the Assignee shall be applied in accordance with the Vessel Construction Agreement

Section 1.03.  **Power of Attorney.**  The Secured Party does hereby irrevocably constitute and appoint the Assignee its true and lawful attorney with full power of substitution for it and in its name, place and stead, to ask, demand, collect, receive, receipt for, sue for, compound and give acquittance for any and all Collateral including, without limitation, the power to execute and endorse for transfer for and on behalf of the Secured Party any documents relating to the Vessel Construction Agreement or the Vessel referenced therein and any and all sums which may be or become due or payable to the Secured Party under the Vessel Construction Agreement or in respect of or on account of the Collateral with full power to settle, adjust or compromise any claim under the Vessel Construction Agreement and such sums as fully as the Secured Party could itself do and, in its discretion, to file any claim or take any other action or proceeding, either in its own name or in the name of the Secured Party, or otherwise, which the Assignee may deem necessary or appropriate to collect any and all sums which may be or become due or payable to the Secured Party under the Vessel Construction Agreement or in respect of or on account of the Collateral, or which may be necessary or appropriate to protect and preserve or enforce the right, title and interest of the Assignee in and to the Collateral and the security intended to be afforded hereby.  The Secured Party hereby further covenants that it will, upon request of the Assignee, execute and deliver such further instruments and do and perform such other acts and things as the Assignee may deem necessary or desirable to more effectually vest in and secure the Assignee in the Collateral, including without limitation the Vessel and sums due or hereafter to become due under the Vessel Construction Agreement.

Section 1.04.  **Performance by Secured Party.**  Secured Party further agrees promptly to perform all of its obligations under the Vessel Construction Agreement.  In the event the Debtor fails to pay or perform any obligation arising under the Vessel Construction Agreement or this Assignment, Secured Party shall immediately notify Assignee in writing.

Section 1.05.  **Acknowledgment of Assignment.**  Secured Party agrees to cause Debtor to execute the acknowledgment of this Assignment which is included at the end of this Assignment.

Section 1.06.  **Vessel Construction Agreement.**  Secured Party agrees, and Debtor by executing the acknowledgment of this Assignment agrees, to the following: (i) upon receipt of a written notice that an Event of Default under the Vessel Construction Agreement has occurred, that all rights of the Secured Party under the Vessel Construction Agreement may only be exercised by the Assignee, and (ii) Secured Party shall provide the Assignee with copies of all notices to the Debtor regarding any default or alleged default by the Debtor under such agreements.

## ARTICLE II

## REPRESENTATIONS, WARRANTIES, AND COVENANTS

Section 2.01.  **Representations and Warranties.**  The Secured Party represents and warrants to Assignee as follows:

(a)     A true, correct and complete copy of the Mortgage is attached hereto as Exhibit A.  A true, correct and complete copy of the Financing Statement is attached hereto as Exhibit B.

(b)     As to the Debtor and the Secured Party, the Vessel Construction Agreement and Mortgage are valid, enforceable and in full force and effect.

2

*123*

(c)     The Secured Party is the sole holder of the rights and interests ascribed thereto under the Vessel Construction Agreement, the Mortgage and the Financing Statement, and has full power and authority to assign, transfer and set over the same and to grant to and confer upon the Assignee the rights, interests, powers and authorities herein granted and conferred.

(d)     The right of the Secured Party to enforce the Vessel Construction Agreement and Mortgage and the assignment and security interest conveyed hereunder are, and will continue to be, free and clear of all defenses, set-offs, counterclaims, Liens and encumbrances of every kind and nature.

(e)     The Secured Party has observed and performed all covenants and obligations under the Vessel Construction Agreement and Mortgage required to be performed by the Secured Party, and the Secured Party shall observe and perform all of the covenants under the Vessel Construction Agreement and Mortgage required of the Secured Party, it being understood that the Assignee shall not be required or obligated in any manner to perform any of the covenants or obligations of the Secured Party under the Vessel Construction Agreement and Mortgage by reason of this Assignment or otherwise.

(f)     The Secured Party has no knowledge of any facts which impair the validity of the Vessel Construction Agreement or the Mortgage

(g)     The Secured Party will not create any lien or other encumbrance upon the Vessel Construction Agreement, the Vessel or the Personal Property Collateral or the right to payment thereunder, other than in favor of the Assignee.

(h)     Except as consented to in writing by Assignee, the Secured Party will not modify, waive or amend or consent to any modification, waiver or amendment of the Vessel Construction Agreement or the Mortgage in any manner.

(i)     Secured Party has the right to sell, assign, transfer, set over and encumber the Mortgage and the Personal Property Collateral to the Assignee and to grant to and confer upon the Assignee the rights, interests, powers and authorities herein granted and conferred.

(j)     Any and all actions, approvals and consents required by law or by any agreement to which the Secured Party is a party have been obtained in connection with the Secured Party's execution and performance of this Assignment; the Secured Party is under no legal disability affecting the enforceability of this Assignment.

(k)     This Assignment has been duly executed and delivered by the Secured Party and is a legal, valid and binding obligation of the Secured Party, enforceable in accordance with its terms, subject, as to enforcement of remedies, to the qualification that an order of specific performance and an injunction are discretionary remedies and, in particular, may not be available where damages are considered an adequate remedy at law.

514071 v2 960766.0213

## ARTICLE III

## DEFAULT

Section 3.01. **Events of Default.** An "Event of Default" shall exist under this Assignment upon the occurrence of any Event of Default (as defined therein) under the Vessel Construction Agreement.

Section 3.02. **Remedies.** Without limiting any rights, remedies or privileges that the Assignee may have under the terms of any instrument or agreement applicable to or related to the Obligations (as defined in the Vessel Construction Agreement), it is understood and agreed that upon the occurrence of an Event of Default, the Assignee, in addition to any other rights or remedies it may have, shall have the right to exercise all the rights, options and remedies of a secured party upon default as provided for under applicable law. Any requirement under applicable law for reasonable notice shall be satisfied if such notice is mailed, postage prepaid, to the Secured Party at its address as shown on the records of the Assignee at least five (5) days before the time of the sale, disposition or other event or thing giving rise to the required notice. The expenses of collecting the sums due or to become due to the Secured Party in, under and pursuant to the Vessel Construction Agreement or in respect of or on account of the Collateral, including without limitation court costs and attorneys' fees incurred in realizing upon the security interest granted hereby or in enforcing this security interest, shall constitute so much additional Obligations which the Secured Party promises to pay to the Assignee upon demand, and may be deducted from the sums so collected.

Without limiting any rights, remedies or privileges that the Assignee may have under the terms of the Construction Agreement, it is understood and agreed that upon the occurrence of any Event of Default hereunder the Assignee may exercise all rights of the Secured Party under the Vessel Construction Agreement.

Section 3.03. **Waiver.** The satisfaction or discharge of any part of the Obligations shall not in any way satisfy or discharge this Assignment, but this Assignment shall remain in full force and effect so long as any amount remains unpaid on any such Obligations or the Assignee is committed to extend credit to or for the account of the Secured Party.

Section 3.04. **Application of Proceeds.** The proceeds of any sale or remedy hereunder, or any part thereof, shall be paid and applied as provided in the Vessel Construction Agreement

Section 3.05. **Indemnification.** This Assignment shall not operate to place any responsibility or obligation whatsoever upon the Assignee. Neither the Assignee nor its respective employees, representatives, agents, officers and directors, shall assume any liability as a result of this Assignment. The Secured Party agrees to protect, indemnify and save harmless the Assignee and its employees, representatives, agents, officers and directors from and against all losses, liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses including, without limitation, legal fees and expenses (except as may arise from the gross negligence or willful misconduct of the Person seeking indemnification) imposed upon, suffered or incurred by the Assignee, or any of its respective employees, representatives, agents, officers and directors, by reason of this Assignment and any claim or demand whatsoever which may be asserted against the Assignee, or any of its employees, representatives, agents, officers and directors, by reason of any alleged obligation or undertaking to be performed or discharged by the Assignee, under this Assignment. In the event the Assignee, or any of its respective employees, representatives, officers and directors, incur any liability, loss or damage by reason of this Assignment or in curing any default or breach by the Secured Party of its obligations under this Assignment or in the defense of any claims or demands arising out of or in connection with this Assignment, the amount of such liability, loss or damage shall be added to the Obligations and shall be payable upon demand.

4

## ARTICLE IV

## MISCELLANEOUS

Section 4.01.   **Notices.**   Unless specifically indicated otherwise herein, all notices and other communications provided for hereunder shall be in writing and addressed as provided in the Vessel Construction Agreement

Section 4.02.   **Severability.**   Any provision of this Assignment which is prohibited, unenforceable or not authorized in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition, unenforceability or nonauthorization without invalidating the remaining provisions hereof or affecting the validity, enforceability or legality of such provision in any other jurisdiction.

Section 4.03.   **Headings.**   Section headings in this Assignment are included herein for convenience of reference only and shall not have any effect for purposes of interpretation or construction of the terms of this Assignment.

Section 4.04.   **Successors and Assigns.**   This Assignment shall inure to the benefit of and be binding upon the Secured Party and the Assignee and their respective heirs, executors, legal representatives, successors and assigns.   Whenever a reference is made in this Assignment to "the Secured Party" or the "Assignee" such reference shall be deemed to include a reference to the heirs, executors, legal representatives, successors and assigns of the Secured Party and the Assignee, as the case may be.

Section 4.05.   **Amendments.**   The Secured Party agrees that it will not agree to any amendment or modification to or termination of the Vessel Construction Agreement or sell or assign any of its interests therein or waive compliance by Debtor with any of the material terms and conditions thereof, without in each case first securing the prior written consent of the Assignee.   Upon notice to Debtor from Assignee that an Event of Default has occurred, Debtor agrees to send to the Assignee copies of all notices and communications with respect to the Vessel Construction Agreement which are required to be sent to the Secured Party pursuant to the Vessel Construction Agreement   If the Vessel Construction Agreement is revoked or otherwise loses full force and effect, the Secured Party will give written notice thereof to the Assignee within five (5) days after the Secured Party knows or has reason to know thereof.

Section 4.06.   **Cumulative Remedies.**   The remedies herein provided shall be in addition to and not in substitution of the rights and remedies vested in the Assignee in any of the Loan Documents or in law or equity, all of which rights and remedies are specifically reserved by the Assignee.   The remedies herein provided or otherwise available to the Assignee shall be cumulative and may be exercised concurrently.   The failure to exercise any of the remedies herein provided shall not constitute a waiver thereof, nor shall use of any of the remedies herein provided prevent the subsequent or concurrent resort to any other remedy or remedies. It is intended that this clause shall be broadly construed so that all remedies herein provided or otherwise available to the Assignee shall continue and be each and all available to the Assignee until the Obligations shall have been paid in full.

Section 4.07.   **Liability of the Secured Party.**   The Secured Party, by its execution hereof, acknowledges and agrees that it is and remains liable for the performance of any and all of its obligations under the Vessel Construction Agreement to the same extent as though this Assignment had not been made and further acknowledges that this Assignment constitutes an assignment of the rights of the Secured Party pursuant to said Agreement   and not an assignment of any duties or obligations of the Secured Party with

5

126

respect to the Vessel Construction Agreement, it being understood that the Assignee shall not be in any manner responsible for the performance of any of such duties and obligations.

Section 4.08. **Integration.** This Assignment shall supersede any prior agreement or understanding between the parties (other than the Loan Documents) as to the subject matter hereof.

Section 4.09. **Counterparts.** This Assignment may be executed in any number of counterparts, each of which shall be deemed to be an original and shall be binding upon both parties, their successors and assigns.

Section 4.10.   **GOVERNING LAW.** THIS ASSIGNMENT SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA AND THE FEDERAL LAWS OF THE UNITED STATES APPLICABLE THEREIN; PROVIDED, THAT TO THE EXTENT THAT PERFECTION AND PRIORITY OF ANY PROPERTY ASSIGNED HEREUNDER IS GOVERNED BY CANADIAN OR BRITISH COLUMBIA LAW THEN CANADIAN OR BRITISH COLUMBIA LAW SHALL CONTROL.

[Remainder of page intentionally left blank]

514071 v2 960766.0213

**IN WITNESS WHEREOF**, the parties hereto have caused this Assignment to be duly executed and delivered under seal by their respective officers thereunto duly authorized, to be effective as of August 14, 2009.

"Secured Party"

By: _____

Name:  Daniel Sargeant, as Attorney-in-fact for Harry Sargeant, III

"Assignee"

**Comerica Bank**

By: _____

Name: Barry W. Shaw

Title: Vice President

The terms of this Assignment are acknowledged and consented to by Debtor:

**"Debtor"**

Worldspan Marine, Inc.

By: _____

Name:

Title:

7

*128*

**IN WITNESS WHEREOF,** the parties hereto have caused this Assignment to be duly executed and delivered under seal by their respective officers thereunto duly authorized, to be effective as of August 14, 2009.

**"Secured Party"**

By: _____
Name:   Daniel Sargeant, as Attorney-in-fact for Harry Sargeant, III

**"Assignee"**

**Comerica Bank**

By: _____
Name: Barry W. Shaw
Title: Vice President

The terms of this Assignment are acknowledged and consented to by Debtor:

**"Debtor"**

Worldspan Marine, Inc.

By: *Lee Taubeneck*
Name: LEE TAUBENECK
Title: PRESIDENT

514071v2 960766.0213

/29

**Exhibit A**

**Builder's Mortgage**

514071 v2 960766.0213

130

| | Transport Canada | Transports Canada | PROTECTED "A" WHEN COMPLETED - PROTÉGÉ « A » LORSQUE REMPLI | FORM/FORMULAIRE 16 |
|---|---|---|---|---|

## BUILDER'S MORTGAGE
## HYPOTHÈQUE DE CONSTRUCTEUR

Entered as Mortgage "A" in the Record Book
Inscrit comme hypothèque « A » au livre d'inscription

14~D5-2008
Date (dd-mm-yyyy / jj-mm-aaaa)

at / à 10:25 a.m./am

Registrar - Registraire.

| Record no. - N° d'inscription | Temporary name or Hull no. - Nom provisoire ou numéro de coque | Intended / port of registry - Port d'immatriculation / prévu |
|---|---|---|
| 3 in 2008 | QE014226C010 | Not in Canada |

**A- BUILDER'S MORTGAGE - HYPOTHÈQUE DE CONSTRUCTEUR**

| Full legal name(s) and address(es) of registered owner(s)/mortgagor(s)<br>Nom(s) officiel(s) au complet et adresse(s) du(des) propriétaire(s)/débiteur(s) hypothécaire(s) | Number of shares<br>Nombre de parts |
|---|---|
| WORLDSPAN MARINE INC., 27222 Lougheed Highway, Maple Ridge, BC V2W 1V9 | 64 |
| | |
| | |
| | |
| | |

**Whereas** (State that there is an account current between mortgagor and mortgagee (describing both), and describe the nature of the transaction so as to show how the amount of principal and interest due at any given time is to be ascertained and the manner and time of payment.)
**Considérant que** (Indiquer qu'il existe un compte courant entre le débiteur hypothécaire et le créancier hypothécaire en désignant l'un et l'autre et décrire la nature de l'opération de façon à indiquer comment le montant du principal et des intérêts dus à date fixe, doivent être déterminés, et le mode et la date du paiement).

There is an account current pursuant to that certain Vessel Construction Agreement dated February 29, 2008 among mortgagor and mortgagee which Agreement specifies the obligations hereby secured.

| Full legal name(s) and address(es) of mortgagee(s) - Nom(s) officiel(s) au complet et adresse(s) du(es) créancier(s) hypothécaire(s) |
|---|
| HARRY SARGEANT III, 3020 N. Military Trail, Suite 100, Boca Raton, Florida 33431 |

I/We, the mortgagor(s) in consideration of the above now covenant with the mortgagee(s) to pay to the mortgagee(s) the sums for the time being due on this security, whether by way of principal or interest, at the times and in the manner set out. For the purpose of better securing payment to the mortgagee(s), the mortgagor(s) hereby mortgage to the mortgagee(s) **64** shares (number of shares must be indicated) of which the mortgagor(s) are the owner(s) in the vessel described above, and in its boats and appurtenances. Further, the mortgagor(s) covenant with the mortgagee(s) that the mortgagor(s) have the power to mortgage the shares and that they are free of encumbrances *except as appears in the record of the said vessel*. (delete if not applicable)

Je/Nous, débiteur(s) hypothécaire(s) en contrepartie, nature de laquelle est décrite ci-dessus, convenons avec le(s) créancier(s) hypothécaire(s) de lui/leur payer dès lors les sommes dues sur la présente garantie, soit en principal, soit en intérêts, aux dates et de la manière indiquées. Afin de mieux garantir au(x) créancier(s) hypothécaire(s) le paiement de ces sommes, déclarant hypothéquer au(x) créancier(s) hypothécaire(s) _____ parts (indiquer le nombre de parts) dans le bâtiment susmentionné et appareaux. En outre, le(s) débiteur(s) hypothécaire(s) conviennent avec le(s) créancier(s) hypothécaire(s) que celui-ci/ceux-ci a(ont) le pouvoir d'hypothéquer ces parts et que celles-ci sont libres de charge *sauf pour ce qui figure d'après l'inscription dudit bâtiment*. (rayer si non applicable)

| Issued at<br>Délivré à | Maple Ridge, B.C. | on<br>le | 06 -05-2008 |
|---|---|---|---|
| | Place - Endroit | | Date (dd-mm-yyyy / jj-mm-aaaa) |

IN THE PESENCE OF: - EN PRÉSENCE DE :

INDIVIDUAL: - PARTICULIER:

_____
Signature

_____
Signature of registered owner/mortgagor - Signature du propriétaire enregistré/débiteur hypothécaire

_____
Name and title (please print) - Nom et titre (en lettres moulées)

_____
Signature of registered owner/mortgagor - Signature du propriétaire enregistré/débiteur hypothécaire

_____
Signature of registered owner/mortgagor - Signature du propriétaire enregistré/débiteur hypothécaire

_____
Address - Adresse

_____
Signature of registered owner/mortgagor - Signature du propriétaire enregistré/débiteur hypothécaire

CORPORATION OR INDIAN BAND
PERSONNE MORALE OU BANDE INDIENNE

WORLDSPAN MARINE INC.
Name of Corporation / Indian Band (please print) - Nom de la personne morale/Bande indienne (en lettres moulées)

_____
Signature

Jim Hawkins, Director
Name and title of person signing above (please print) - Nom et titre de la personne signant ci-dessus (en lettres moulées)

SEAL
SCEAU

84-0067 (0712-06)

Page 1 of 3

Canada

131

| Record no. - N° d'inscription | Temporary name or Hull no. - Nom provisoire ou numéro de coque | Intended / port of registry - Port d'immatriculation / prévu |
|---|---|---|

**B - DISCHARGE OF BUILDER'S MORTGAGE - MAINLEVÉE DE L'HYPOTHÈQUE DE CONSTRUCTEUR**

I/We, the mortgagee(s) authorize the discharge of the mortgage described above
Je/Nous, le(s) créancier(s) hypothécaire(s), autorise(autorisons) la mainlevée de l'hypothèque décrite ci-dessus

Issued at
Délivré à _____ on / le _____
_____ Place - Endroit          Date (dd-mm-yyyy / jj-mm-aaaa)

IN THE PRESENCE OF: - EN PRÉSENCE DE :          INDIVIDUAL: - PARTICULIER:

_____          _____
Signature                                  Signature of mortgagee - Signature du créancier hypothécaire

_____          _____
Name and title (please print) - Nom et titre (en lettres moulées)     Signature of mortgagee - Signature du créancier hypothécaire

Address - Adresse
_____

CORPORATION
OR INDIAN BAND
PERSONNE MORALE   →   _____
OU BANDE INDIENNE      Name of Corporation / Indian Band (please print) - Nom de la personne morale/Bande indienne (en lettres moulées)

SEAL
SCEAU

_____
Signature

_____
Name and title of person signing above (please print) - Nom et titre de la personne signant ci-dessus (en lettres moulées)

CORPORATION
OR INDIAN BAND
PERSONNE MORALE   →   _____
OU BANDE INDIENNE      Name of Corporation / Indian Band (please print) - Nom de la personne morale/Bande indienne (en lettres moulées)

SEAL
SCEAU

_____
Signature

_____
Name and title of person signing above (please print) - Nom et titre de la personne signant ci-dessus (en lettres moulées)

**NOTES: - REMARQUES :**
1. The expressions "mortgagee" and "mortgagor " used in this document include their heirs, successors, assigns, executors, administrators and any other legal representative.
   Les termes "débiteur hypothécaire" et "créancier hypothécaire" employés dans le présent acte visent leurs héritiers, successeurs, ayants droit, exécuteurs, administrateurs et tout autre représentant légal.
2. This mortgage must be completed by all of the owner(s).  If jointly owned, all the joint owners must act together.
   L'hypothèque doit être complétée par tous les propriétaires.  Dans le cas d'un intérêt conjoint, tous les propriétaires conjoints doivent agir ensemble.
3. In the case of a corporation, this Mortgage must be made  by an officer of the corporation authorized by company resolution or by affixing the seal of the  corporation on this form. Dans le cas d'une personne morale, l'hypothèque doit être faite par un agent de la personne morale autorisé par une résolution de celle-ci ou doit porter le sceau de la personne morale.
4. In the case of an Indian Band, this Application must be made by person(s) authorized by Band Council Resolution.
   Dans le cas d'une bande indienne, la demande doit être faite par une(des) personne(s) autorisée(s) par une résolution du Conseil de bande.
5. The original builder's mortgage deed must be presented to discharge a builder's mortgage or if not available, by Statutory Declaration.
   L'acte hypothécaire original du constructeur ou, si cet acte n'est pas disponible, une déclaration solennelle doit être produite pour la mainlevée de l'hypothèque du constructeur.

132

**Exhibit B**

**Financing Statement**

9

TRUCTED BY BUILDER, TOGETHER WITH ANY AND ALL PRESENT AND FUTURE MATER
IALS, COMPONENTS, ENGINES, BOILERS, MACHINERY, MASTS, BOATS, ANCHORS,
CABLES, CHAINS, RIGGING, TACKLE, APPAREL, FURNITURE, CAPSTANS, OUTFIT,
TOOLS, PUMPS, GEAR, FURNISHINGS, APPLIANCES, FITTINGS, SPARE AND REPL
ACEMENT PARTS FOR SUCH VESSEL AND ANY AND ALL MANUALS, MATERIALS, SUPP
LIES AND COMPONENTS IN ANY WAY RELATED TO THE CONSTRUCTION OF SUCH VES
SEL AND ANY AND ALL OTHER APPURTENANCES THERETO, APPERTAINING OR BELON
GING TO SUCH VESSEL, WHETHER NOW OR HEREAFTER ACQUIRED, AND WHETHER ON
BOARD OR NOT ONBOARD, TOGETHER WITH ANY AND ALL PRESENT AND FUTURE ADD
ITIONS, IMPROVEMENTS AND REPLACEMENTS THEREFOR, MADE IN OR TO SAID VES
SEL, OR ANY PART OR PARTS THEREOF.

--------------- A M E N D M E N T / O T H E R   C H A N G E ---------------

Reg. #: 989187D

Reg. Date: OCT 19, 2007
Reg. Time: 10:05:00
Control #: B8347024

Base Reg. Type: PPSA SECURITY AGREEMENT
Base Reg. #: 931405D          Base Reg. Date: SEP 21, 2007

Continued on Page 15

Search Criteria: WORLDSPAN MARINE INC                          Page: 15

Details Description:
ADDITION OF DEBTOR
Block#

*** ADDED ***
D0002    Bus. Debtor: WORLDSPAN MARINE INC.
                      27222 LOUGHEED HIGHWAY
                      MAPLE RIDGE BC  V2W 1V9

         Registering
              Party: LINDSAY KENNEY
                     1800 -401 WEST GEORGIA STREET
                     VANCOUVER B.C.  V6B 5A1

*************** P P S A   S E C U R I T Y   A G R E E M E N T ***************

Reg. Date: MAY 01, 2008          Reg. Length: 5 YEARS
Reg. Time: 11:29:29              Expiry Date: MAY 01, 2013
Base Reg. #: 334150E             Control #: B8703229
Block#

S0001    Secured Party: HARRY SARGEANT III
                        3020 N. MILITARY TRAIL, #100
                        BOCA RATON FL  33431

=D0001   Base Debtor: WORLDSPAN MARINE INC
         (Business) 27222 LOUGHEED HWY, PO BOX 10
                    MAPLE RIDGE BC  V2W 1V9

         General Collateral:
         A FIBREGLASS COMPOSITE MOTOR YACHT KNOWN AS A CRESCENT CUSTOM 142'
         TRILEVEL MOTOR YACHT CARRYING BUILDER'S HULL NUMBER QEO14226C010
         (THE "VESSEL") BEING CONSTRUCTED BY WORLDSPAN MARINE INC.

("WORLDSPAN") AT OR ABOUT 27222 LOUGHEED HIGHWAY, MAPLE RIDGE, BRITISH COLUMBIA, AND ALL ITEMS IDENTIFIED FOR USE IN THE CONSTRUCTION OF THE VESSEL UNDER THE TERMS OF THAT VESSEL CONSTRUCTION AGREEMENT DATED FEBRUARY 29, 2008 MADE BETWEEN WORLDSPAN AS BUILDER AND HARRY SARGEANT III AS OWNER, WHETHER SUCH ITEMS ARE NOW EXISTING OR HEREAFTER ACQUIRED, INCLUDING, WITHOUT LIMITATION:

A.   ALL PARTS, MATERIAL, EQUIPMENT, INVENTORY AND OTHER GOODS (THE "COMPONENTS") CREATED, MANUFACTURED, ORDERED OR DELIVERED FOR PLACEMENT ON OR INCORPORATION INTO THE VESSEL OR WHICH ARE OTHERWISE IDENTIFIED FOR USE IN CONNECTION WITH CONSTRUCTION OF THE VESSEL OR IN THE VESSEL CONSTRUCTION AGREEMENT;
B.   ALL ACCOUNTS, CHATTEL PAPER, DOCUMENTS, INSTRUMENTS, PROMISSORY NOTES, INVESTMENT PROPERTY, LETTERS OF CREDIT, COMMERCIAL TORT CLAIMS OR GENERAL INTANGIBLES IN RESPECT OF THE VESSEL OR THE VESSEL CONSTRUCTION AGREEMENT;
C.   THE RIGHTS OF WORLDSPAN TO ANY PLANS, SPECIFICATIONS, SHOP DRAWINGS, COMPUTER PRINTOUTS, DIAGRAMS, MODELS AND ELECTRONIC DATA OR OTHERWISE RELATED TO OR FOR THE USE IN THE DESIGN OR CONSTRUCTION OF THE VESSEL OR IN RESPECT OF THE VESSEL;
D.   THE RIGHTS OF WORLDSPAN TO ANY SOFTWARE, INCLUDING OPERATING

Continued on Page 16

Search Criteria: WORLDSPAN MARINE INC                          Page: 16

PROGRAMS, APPLICATIONS AND ELECTRONIC DATA AND FILES FOR USE IN THE DESIGN OR CONSTRUCTION OF THE VESSEL OR IN RESPECT OF THE VESSEL INCLUDING ALL RIGHTS AND LICENSES OF WORLDSPAN TO USE SUCH SOFTWARE; AND
E.   ALL PROCEEDS, INCLUDING, WITHOUT LIMITATION, ANY INSURANCE CLAIMS OR PROCEEDS, IN RESPECT OF ANY OF THE FOREGOING.
FOR THE PURPOSES OF PARAGRAPH A ABOVE EACH OF THE COMPONENTS SHALL BE CONSIDERED AS BEING IDENTIFIED TO THE VESSEL OR TO THE VESSEL CONSTRUCTION AGREEMENT, DEPENDING ON THE NATURE OF SUCH COMPONENT, AS FOLLOWS:
1.   WHEN IT BEGINS TO BE MANUFACTURED IN ACCORDANCE WITH THE PLANS AND SPECIFICATIONS, IF IT IS SPECIFICALLY MANUFACTURED BY WORLDSPAN,
2.   WHEN IT IS REMOVED FROM INVENTORY, IF IT IS TAKEN FROM THE GENERAL INVENTORY OF WORLDSPAN,
3.   WHEN IT IS DELIVERED TO WORLDSPAN FOR THE VESSEL, IF IT IS ORDERED SPECIFICALLY FOR THE VESSEL AND PART OF THE SUPPLIER'S INVENTORY;
4.   WHEN IT IS IDENTIFIED BY THE MANUFACTURER, IF IT IS ORDERED SPECIFICALLY FOR THE VESSEL; OR
5.   WHEN IT IS INCORPORATED INTO, ATTACHED, OR PLACED ON THE VESSEL, IF IT IS ANYTHING OTHER THAN THE ITEMS SET FORTH ABOVE IN CLAUSES (1), (2), (3) OR (4).
TERMS USED HEREIN THAT ARE DEFINED IN THE PERSONAL PROPERTY SECURITY ACT (BRITISH COLUMBIA), THE REGULATIONS MADE THEREUNDER OR ANY AMENDMENTS MADE THERETO HAVE THOSE DEFINED MEANINGS.

Registering

```
            Party: LANG MICHENER LLP
                   BOX 11117,1500 1055 W. GEORGIA
                   VANCOUVER BC  V6E 4N7

***************************************************************************

    Some, but not all, tax liens and other Crown claims are registered at the
    Personal Property Registry (PPR) and if registered, will be displayed on
    this search result.  HOWEVER, it is possible that a particular chattel is
    subject to a Crown claim that is not registered at the PPR.  Please consult
    the Miscellaneous Registrations Act, 1992 for more details.  If you are
    concerned that a particular chattel may be subject to a Crown claim not
    registered at the PPR, please consult the agency administering the type
    of Crown claim.


>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>>> END OF SEARCH <<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<<
```

*136*

④

BC OnLine: DOCUMENT PRINT                2009/08/12
Lterm: XPSP0050          For: PZ69191  LANG MICHENER          15:23:13

Attn./Ref. No.: 57206-10

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* P P S A   S E C U R I T Y   A G R E E M E N T \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

          Reg. Date: AUG 12, 2009          Reg. Length: 3 YEARS
          Reg. Time: 15:23:13          Expiry Date: AUG 12, 2012
          Base Reg. #: 123779F          Control #: B9514907
Block#

S0001   Secured Party: COMERICA BANK
                       100 NE 3RD AVENUE, SUITE 100
                       FORT LAUDERDALE FL  33302

D0001   Base Debtor: SARGENT              HARRY          III
        (Individual) #100-3020 NORTH MILITARY TRAIL   Birthdate:
                     BOCA RATON          FL   33431

        General Collateral:
        ALL OF THE RIGHT, TITLE AND INTEREST OF DEBTOR IN AND TO ALL OF THE
        FOLLOWING PROPERTY (COLLECTIVELY, THE "COLLATERAL"):
        (A) THAT AGREEMENT (THE "VESSEL CONSTRUCTION AGREEMENT") DATED
        FEBRUARY 29, 2008 MADE BETWEEN WORLDSPAN MARINE INC. AND THE
        DEBTOR FOR THE CONSTRUCTION OF A CRESCENT CUSTOM 142' TRILEVEL
        YACHT HAVING BUILDER'S HULL NO. QE014226C010 (THE "VESSEL") AND ALL OF
        THE RIGHTS, CLAIMS, BENEFITS, POWERS AND REMEDIES OF DEBTOR
        THEREUNDER, INCLUDING, WITHOUT LIMITATION, THE RIGHT TO ENSURE THE
        COMPLETION OF CONSTRUCTION OF THE VESSEL, AND THE RIGHT TO ALL
        MONIES AND CLAIMS FOR MONIES OWING OR WHICH AT ANY TIME HEREAFTER
        MAY BECOME OWING TO DEBTOR UNDER OR AS A RESULT OF THE BREACH OF
        THE VESSEL CONSTRUCTION AGREEMENT, THE BUILDERS MORTGAGE IN
        RESPECT OF THE VESSEL GRANTED TO DEBTOR PURSUANT TO THE VESSEL
        CONSTRUCTION AGREEMENT (AND HAVING RECORD NO. 3 IN 2008 IN THE SHIP
        REGISTRY VANCOUVER), AND THE SECURITY INTEREST GRANTED TO DEBTOR
        PURSUANT TO THE VESSEL CONSTRUCTION AGREEMENT (AND HAVING BASE
        REGISTRATION NO. 334150E);
        (B) ALL RIGHT, TITLE AND INTEREST IN AND TO ANY OTHER CONTRACTS,
        SUBCONTRACTS OR AGREEMENTS FOR SERVICES, LABOR OR MATERIALS
        PERTAINING TO THE VESSEL, AND ALL CLAIMS AND RIGHTS WITH RESPECT TO
        NON-PERFORMANCE OR BREACH OF SAID CONTRACTS, SUBCONTRACTS AND
        AGREEMENTS;
        (C) ALL RIGHT, TITLE AND INTEREST IN AND TO ANY PROCEEDS, REVENUES,
        OR OTHER BENEFITS ARISING UNDER OR PURSUANT TO ANY OF THE ASSIGNED
        CONTRACTS (AS DEFINED HEREIN) AND ALL MONIES, ADDITIONAL DOCUMENTS
        OR INSTRUMENTS, OR OTHER PROPERTY AT ANY TIME AND FROM TIME TO TIME
        PAYABLE, RECEIVABLE, OR OTHERWISE DISTRIBUTABLE IN RESPECT OF, IN
        EXCHANGE FOR, OR IN SUBSTITUTION OF ANY OF THE ASSIGNED CONTRACTS
        INCLUDING, WITHOUT LIMITATION, ANY RIGHT TO RECEIVE PROCEEDS OF ANY
        INSURANCE, INDEMNITY, WARRANTY OR GUARANTY WITH RESPECT TO ANY OF
        THE ASSIGNED CONTRACTS;
        (D) ALL RIGHTS, CLAIMS, POWERS, PRIVILEGES, AND REMEDIES OF DEBTOR,
        WHETHER ARISING BY STATUTE, AT LAW, IN EQUITY OR OTHERWISE, OR
        PROVIDED FOR IN THE ASSIGNED CONTRACTS FOR THE FAILURE ON THE PART
        OF ANY PARTY TO PERFORM OR COMPLY WITH ANY TERM OF THE ASSIGNED

*137*

Continued on Page 2

Control #: B9514907                                                Page: 2

CONTRACTS;

(E) ALL MONIES AND CLAIMS FOR MONIES OWING OR WHICH AT ANY TIME
HEREAFTER MAY BECOME OWING TO DEBTOR FROM UNDERWRITERS,
INSURANCE COMPANIES, INDEMNITORS OR FUNDS IN RESPECT OF ANY TYPE OF
INSURANCE ON THE VESSEL OR ON ANY MATERIALS, MACHINERY, PARTS OR
EQUIPMENT THEREFORE, WHETHER SUCH INSURANCE BE MAINTAINED BY
DEBTOR OR THE BUILDER;

(F) ALL MONIES AND CLAIMS FOR MONIES OWING OR WHICH AT ANY TIME
HEREAFTER MAY BECOME OWING TO DEBTOR, AND ALL CLAIMS OF DEBTOR
FOR DAMAGES, IN RESPECT OF THE ACTUAL OR CONSTRUCTIVE TOTAL LOSS OF
THE VESSEL.

PROCEEDS : ALL PROCEEDS THAT ARE GOODS, CHATTEL PAPER,
INTANGIBLES, INSTRUMENTS, DOCUMENTS OF TITLE, INVESTMENT PROPERTY,
MONEY OR OTHER PRESENT OR AFTER-ACQUIRED PERSONAL PROPERTY.

TERMS USED IN THIS GENERAL COLLATERAL DESCRIPTION WHICH ARE
DEFINED IN THE PERSONAL PROPERTY SECURITY ACT (BRITISH COLUMBIA)
SHALL HAVE THE MEANINGS SPECIFIED IN THAT ACT, UNLESS THE CONTEXT
OTHERWISE REQUIRES.

THE TERM "ASSIGNED CONTRACTS" SHALL MEAN THE VESSEL CONSTRUCTION
AGREEMENT AND ALL OF THE CONTRACTS ASSIGNED TO SECURED PARTY
PURSUANT TO THE ASSIGNMENT OF VESSEL CONSTRUCTION AGREEMENT BY
AND BETWEEN DEBTOR, AS ASSIGNOR, AND SECURED PARTY AS ASSIGNEE
DATED AUGUST 14, 2009.

Registering
Party: LANG MICHENER LLP
        BOX 11117,1500 1055 W. GEORGIA
        VANCOUVER BC  V6E 4N7

>>>>>>>>>>>>>>>>>>>>>>>>>>>> END OF DOCUMENT PRINT <<<<<<<<<<<<<<<<<<<<<<<<<<

138

(a)

## ASSIGNMENT OF INSURANCES
### (Construction Period)

**HARRY SARGEANT, III** (hereinafter called the "Purchaser"), is the purchaser of an 142 foot motor yacht identified as hull no. QEO14226C010 (the "Vessel") being built for the Purchaser by Worldspan Marine, Inc., a British Columbia corporation (the "Builder"), pursuant to the Vessel Construction Agreement between Purchaser and Builder, dated as of February 29, 2008, as at any time amended (the "Vessel Construction Agreement") regarding the construction and purchase of the Vessel, title to which Vessel remains in the Builder during construction **Comerica Bank** ("Assignee") is making a Nine Million Four Hundred Thousand and 00/100 Dollars ($9,400,000.00) loan to Purchaser to partially finance the construction and acquisition of the Vessel (the "Loan") under the terms of the Vessel Construction Agreement

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser and Builder do hereby assign, unto Assignee, and unto the Assignee's successors and assigns, to its and its successors and assigns' own proper use and benefit, as collateral security for Purchaser's indebtedness to the Assignee now or hereafter existing, all rights, title and interest of the Builder and Purchaser, as loss payee or otherwise as their interests may appear, under, in and to:

A.   With respect to the Vessel only, subject to Builder's Retained Interest (defined below), all insurances (including, without limitation, all builder's risks insurance or marine insurance), whether heretofore, now or hereafter effected, and all renewals of or replacements for the same (whether such insurance be maintained by Builder or Purchaser);

B.   With respect to the Vessel only, subject to Builder's Retained Interest, all insurance claims and proceeds thereof, returns of premium and other monies and claims for monies which may be or become payable under or in respect of any of said insurances, including any amounts payable due to the partial loss or actual, constructive, agreed, arranged or compromised total loss of the Vessel, or due to the loss, damage or destruction of any materials, machinery, parts, furnishings or any type of equipment therefor;

C.   With respect to the Vessel only, and subject to Builder's Retained Interest, all other rights of Purchaser or Builder under or in respect of any of said insurances; and

D.   All proceeds of all of the foregoing.

The items assigned in "A" through "D" above are hereinafter referred to as the "Insurances".

**Notwithstanding any of the provisions of this Assignment to the contrary, Builder retains a first right to payment under the Insurances for all amounts due and payable to Builder under the terms of the Vessel Construction Agreement ("Builder's Retained Interest").**

This Assignment is made pursuant to the Note dated as of even date herewith (the "Note") executed and delivered by Purchaser, as maker, in favor of Assignee, as payee, and various other documents executed or to be executed in connection therewith (the Note and such other documents being collectively the "Loan Documents") between Assignee and the Purchaser. This Assignment is intended to grant to Assignee a security interest in the assigned property as security for all amounts due Assignee under the Loan Documents and all other moneys due and to become due from Purchaser to Assignee, whether under said Loan Documents, or otherwise, and may be further assigned in connection with the enforcement of said security interest of Assignee.

1

This is Exhibit "E" referred to in the affidavit of Cynthia B. Jones sworn before me at Miller, Canfield, Paddock and Stone, P.L.C. this 7th day of October, 2011

*Judith Ann Sutton*

**JUDITH ANN SUTTON**
514053v2 960766.013   **NOTARY PUBLIC - STATE OF MICHIGAN**
**COUNTY OF WAYNE**
**My Commission Expires Mar. 29, 2014**
ACTING IN THE COUNTY OF WAYNE

It is expressly agreed that anything herein contained to the contrary notwithstanding, Purchaser and Builder, as applicable, shall remain liable under said Insurances to perform all of the obligations assumed by them thereunder. Assignee shall have no obligation or liability (including, without limitation, any obligation or liability with respect to the payment of premiums, calls or assessments) under said Insurances by reason of or arising out of this instrument of assignment, nor shall Assignee be required or obligated in any manner to perform or fulfill any obligations of Purchaser or Builder under or pursuant to said Insurances, or to make any payment, or to make any inquiry as to the nature or sufficiency of any payment received by them, or to present or file any claim, or to take any other action to collect or enforce the payment of any amounts which may have been assigned to them, or to which they may be entitled hereunder at any time or times.

Purchaser does hereby constitute Assignee, its successors and assigns, their true and lawful attorney, irrevocably, with full power (in their name or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all moneys and claims for moneys due and to become due under or arising out of said Insurances, to endorse any checks or other instruments or orders in connection therewith, to make, compromise, withdraw or otherwise deal with any claims, and/or to take any action or institute any proceedings which Assignee may deem to be necessary or advisable in the premises. The powers and authority granted to Assignee herein have been given for a valuable consideration and are hereby declared to be irrevocable.

Purchaser and Builder do hereby warrant and represent that they have not assigned, pledged or in any way created or suffered to be created a security interest in the whole or any part of the right, title and interest hereby assigned except in favor of Assignee. Purchaser and Builder hereby covenant that, without the prior written consent thereof of Assignee, so long as this instrument of assignment shall remain in effect, it will not assign or pledge or create a security interest in the whole or any part of the right, title and interest hereby assigned to anyone other than Assignee, its successors or assigns, and it will not take or omit to take any action, the taking or omission of which might result in an alteration or impairment of said Insurances, of this Assignment or of any of the rights created by said Insurances or this Assignment.

Purchaser and Builder agree that at any time and from time to time, upon the written request of Assignee, its successors and assigns, Purchaser and Builder will promptly and duly execute and deliver any and all such further instruments and documents as Assignee, its successors and assigns, may reasonably request in order to obtain the full benefits of this Assignment and of the rights and powers herein granted. Purchaser shall reimburse Builder for Builder's reasonable out of pocket costs and expenses associated with complying with the preceding sentence.

Any payments made pursuant to the terms hereof shall be made to such account as may, from time to time, be designated by Assignee, and shall be applied as provided in the Loan Documents.

This Assignment shall be governed by the laws of the State of Florida and may not be amended or changed except by an instrument in writing; provided, that to the extent that perfection and priority of any property assigned hereunder is governed by Canadian or British Columbia law, then Canadian or British Columbia law shall control.

Purchaser and Builder hereby authorize Assignee to execute on its behalf and file, at any time and from time to time, any Financing Statements (Form UCC-1) and amendments thereto (Form UCC-3) as provided in Article 9 of the Uniform Commercial Code, or papers of similar purpose or effect in respect of this Assignment in any applicable jurisdiction which may be necessary or desirable to perfect the security interests of Assignee hereunder.

2



All of the provisions of this Assignment shall be binding upon Purchaser and Builder and their successors, executors or personal representatives and shall inure to the benefit of Assignee and its successors and assigns. Any and all rights assigned herein may be further assigned by Assignee.

By executing this Assignment, it is acknowledged by the parties that the rights assigned to Assignee herein shall be no greater than Purchaser's rights under the Construction Agreement  The parties expressly acknowledge Builder's first lien rights and rights to payment of any insurance proceeds.  Builder has no duties to Purchaser that are not expressly set forth in the Vessel Construction Agreement and no additional obligations are created except as modified by this Assignment, as their interests may appear.

[Remainder of page intentionally left blank]

3



**IN WITNESS WHEREOF**, Purchaser and Builder have caused this Assignment to be duly executed as of the 14th day of August, 2009.

**Purchaser:**

By: _____

Name:  Daniel Sargeant, as attorney-in-fact for Harry Sargeant, III

**Builder:**

Worldspan Marine, Inc.

By: _____
Name: _____
Title: _____

The Assignee acknowledges and accepts this assignment:

Comerica Bank

By: _____
Name: Barry W. Shaw
Title: Vice President

4

514053v2 960766.0213

142

**IN WITNESS WHEREOF**, Purchaser and Builder have caused this Assignment to be duly executed as of the 14th day of August, 2009.

Purchaser:

By: _____
Name:  Daniel Sargeant, as attorney-in-fact
for Harry Sargeant, III

**Builder:**

Worldspan Marine, Inc.

By: _____
Name: _____
Title: _____

The Assignee acknowledges and accepts this assignment:

Comerica Bank

By: _____
Name: Barry W. Shaw
Title: Vice President

4

514053v2960766.0213

143

## ASSIGNMENT OF INSURANCES
### (Construction Period)

**HARRY SARGEANT, III** (hereinafter called the "Purchaser"), is the purchaser of an 142 foot motor yacht identified as hull no. QEO14226C010 (the "Vessel") being built for the Purchaser by Worldspan Marine, Inc., a British Columbia corporation (the "Builder"), pursuant to the Vessel Construction Agreement between Purchaser and Builder, dated as of February 29, 2008, as at any time amended (the "Vessel Construction Agreement") regarding the construction and purchase of the Vessel, title to which Vessel remains in the Builder during construction **Comerica Bank** ("Assignee") is making a Nine Million Four Hundred Thousand and 00/100 Dollars ($9,400,000.00) loan to Purchaser to partially finance the construction and acquisition of the Vessel (the "Loan") under the terms of the Vessel Construction Agreement.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Purchaser and Builder do hereby assign, unto Assignee, and unto the Assignee's successors and assigns, to its and its successors and assigns' own proper use and benefit, as collateral security for Purchaser's indebtedness to the Assignee now or hereafter existing, all rights, title and interest of the Builder and Purchaser, as loss payee or otherwise as their interests may appear, under, in and to:

A.      With respect to the Vessel only, subject to Builder's Retained Interest (defined below), all insurances (including, without limitation, all builder's risks insurance or marine insurance), whether heretofore, now or hereafter effected, and all renewals of or replacements for the same (whether such insurance be maintained by Builder or Purchaser);

B.      With respect to the Vessel only, subject to Builder's Retained Interest, all insurance claims and proceeds thereof, returns of premium and other monies and claims for monies which may be or become payable under or in respect of any of said insurances, including any amounts payable due to the partial loss or actual, constructive, agreed, arranged or compromised total loss of the Vessel, or due to the loss, damage or destruction of any materials, machinery, parts, furnishings or any type of equipment therefor;

C.      With respect to the Vessel only, and subject to Builder's Retained Interest, all other rights of Purchaser or Builder under or in respect of any of said insurances; and

D.      All proceeds of all of the foregoing.

The items assigned in "A" through "D" above are hereinafter referred to as the "Insurances".

**Notwithstanding any of the provisions of this Assignment to the contrary, Builder retains a first right to payment under the Insurances for all amounts due and payable to Builder under the terms of the Vessel Construction Agreement ("Builder's Retained Interest").**

This Assignment is made pursuant to the Note dated as of even date herewith (the "Note") executed and delivered by Purchaser, as maker, in favor of Assignee, as payee, and various other documents executed or to be executed in connection therewith (the Note and such other documents being collectively the "Loan Documents") between Assignee and the Purchaser. This Assignment is intended to grant to Assignee a security interest in the assigned property as security for all amounts due Assignee under the Loan Documents and all other moneys due and to become due from Purchaser to Assignee, whether under said Loan Documents, or otherwise, and may be further assigned in connection with the enforcement of said security interest of Assignee.

1

514053v2 960766.0213

It is expressly agreed that anything herein contained to the contrary notwithstanding, Purchaser and Builder, as applicable, shall remain liable under said Insurances to perform all of the obligations assumed by them thereunder. Assignee shall have no obligation or liability (including, without limitation, any obligation or liability with respect to the payment of premiums, calls or assessments) under said Insurances by reason of or arising out of this instrument of assignment, nor shall Assignee be required or obligated in any manner to perform or fulfill any obligations of Purchaser or Builder under or pursuant to said Insurances, or to make any payment, or to make any inquiry as to the nature or sufficiency of any payment received by them, or to present or file any claim, or to take any other action to collect or enforce the payment of any amounts which may have been assigned to them, or to which they may be entitled hereunder at any time or times.

Purchaser does hereby constitute Assignee, its successors and assigns, their true and lawful attorney, irrevocably, with full power (in their name or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all moneys and claims for moneys due and to become due under or arising out of said Insurances, to endorse any checks or other instruments or orders in connection therewith, to make, compromise, withdraw or otherwise deal with any claims, and/or to take any action or institute any proceedings which Assignee may deem to be necessary or advisable in the premises. The powers and authority granted to Assignee herein have been given for a valuable consideration and are hereby declared to be irrevocable.

Purchaser and Builder do hereby warrant and represent that they have not assigned, pledged or in any way created or suffered to be created a security interest in the whole or any part of the right, title and interest hereby assigned except in favor of Assignee. Purchaser and Builder hereby covenant that, without the prior written consent thereof of Assignee, so long as this instrument of assignment shall remain in effect, it will not assign or pledge or create a security interest in the whole or any part of the right, title and interest hereby assigned to anyone other than Assignee, its successors or assigns, and it will not take or omit to take any action, the taking or omission of which might result in an alteration or impairment of said Insurances, of this Assignment or of any of the rights created by said Insurances or this Assignment.

Purchaser and Builder agree that at any time and from time to time, upon the written request of Assignee, its successors and assigns, Purchaser and Builder will promptly and duly execute and deliver any and all such further instruments and documents as Assignee, its successors and assigns, may reasonably request in order to obtain the full benefits of this Assignment and of the rights and powers herein granted. Purchaser shall reimburse Builder for Builder's reasonable out of pocket costs and expenses associated with complying with the preceding sentence.

Any payments made pursuant to the terms hereof shall be made to such account as may, from time to time, be designated by Assignee, and shall be applied as provided in the Loan Documents.

This Assignment shall be governed by the laws of the State of Florida and may not be amended or changed except by an instrument in writing; provided that to the extent that perfection and priority of the security interest in any property assigned hereunder is governed by Canadian or British Columbia law, Canadian or British Columbia law shall control.

Purchaser and Builder hereby authorize Assignee to execute on its behalf and file, at any time and from time to time, any Financing Statements (Form UCC-1) and amendments thereto (Form UCC-3) as provided in Article 9 of the Uniform Commercial Code, or papers of similar purpose or effect in respect of this Assignment in any applicable jurisdiction which may be necessary or desirable to perfect the security interests of Assignee hereunder.

2

All of the provisions of this Assignment shall be binding upon Purchaser and Builder and their successors, executors or personal representatives and shall inure to the benefit of Assignee and its successors and assigns. Any and all rights assigned herein may be further assigned by Assignee.

By executing this Assignment, it is acknowledged by the parties that the rights assigned to Assignee herein shall be no greater than Purchaser's rights under the Construction Agreement. The parties expressly acknowledge Builder's first lien rights and rights to payment of any insurance proceeds. Builder has no duties to Purchaser that are not expressly set forth in the Vessel Construction Agreement and no additional obligations are created except as modified by this Assignment, as their interests may appear.

[Remainder of page intentionally left blank]

3



**IN WITNESS WHEREOF**, Purchaser and Builder have caused this Assignment to be duly executed as of the 14th day of August, 2009.

**Purchaser:**

By: _____
Name:  Daniel Sargeant, as attorney-in-fact
for Harry Sargeant, III

**Builder:**

Worldspan Marine, Inc.

By: *Lee Taubeneck*
Name:  LEE TAUBENECK
Title:  PRESIDENT

The Assignee acknowledges and accepts this assignment:

Comerica Bank

By: _____
Name: Barry W. Shaw
Title: Vice President

4

**Builder's Acknowledgment and Consent**

To:     Comerica Bank
        100 N.E. 3rd Avenue, Suite 100
        Fort Lauderdale, FL 33301
        Attn: Barry W. Shaw, Vice President

Dear Mr. Shaw:

Re: Vessel Construction Agreement (the "Vessel Construction Agreement") dated February 29, 2008 between Worldspan Marine, Inc., a British Columbia corporation ("Builder") and Harry Sargeant, III ("Owner") regarding the construction by Builder, and Builder's sale to Owner of that certain 142 foot motor yacht identified as Builder's hull no. QEO14226C010 ("the Vessel")

1.      We acknowledge notice of, and consent to, the fact that by Assignment of Vessel Construction Agreement dated as of even date herewith, Owner has assigned to you all its beneficial interests and all its benefits, rights and titles (but not its obligations) in and under the Vessel Construction Agreement, and all amendments, modifications, replacements or restatements thereof relating to the construction of the Vessel, but that the Buyer continues to be responsible to us for performance of its obligations thereunder and until such time as you may give us notice in writing that an Event of Default has occurred, the Buyer may continue to superintend the construction of the Vessel, require modifications in accordance with the terms of the Vessel Construction Agreement (and our right to be paid by the Buyer for such modifications required by the Buyer in accordance with the terms of the Vessel Construction Agreement prior to such notice being given by you shall not be affected) and/or take delivery of the Vessel and/or (subject to clause 2 below) exercise all the Buyer's rights, privileges and discretions under and in relation to the Vessel Construction Agreement and we may continue to deal with the Buyer accordingly. (Any references to "we" or "us" in this letter means collectively, the Builder).

2.      In accordance with authority and instructions given to us by the Buyer, which cannot be revoked or varied without your consent in writing, we hereby undertake:

        (a)     upon payment and satisfaction of the Final Purchase Price, to deliver to you or to your order the Builder's Certificate and any other documents or certificates required to be delivered to Buyer under the terms of the Contract;

        (b)     to pay to you all sums which we may become liable to pay to the Buyer under the Contract, including sums arising from an arbitration award; and

        (c)     no further assignments or grants of security by the Buyer in the Vessel Construction Agreement will be consented to by us without your written consent.

3.      We hereby further undertake that:

        (a)     should default be made by the Buyer in any installment of the Final Purchase Price of the Vessel or should the Buyer commit any other default and we then take any action to exercise our remedies under the Vessel Construction Agreement to either stop work on the Vessel or to terminate the Contract, we shall immediately give you notice in writing; and

This is Exhibit "F" referred to in the affidavit of
Cynthia B. Jones sworn before me at Miller,
Canfield, Paddock and Stone, P.L.C. this 7th
day of October, 2011

*Judith Ann Sutton*

514055v2 960766 0215     **JUDITH ANN SUTTON**
        **NOTARY PUBLIC - STATE OF MICHIGAN**
        **COUNTY OF WAYNE**
        **My Commission Expires Mar. 29, 2014**
        *ACTING IN THE COUNTY OF WAYNE*

148

(b)   before exercising any option or right available to us on any such default as is mentioned in sub-clause (a) above, we shall first give you the opportunity, to be exercised within thirty (30) days, to rectify all the Buyer's subsisting defaults under the Vessel Construction Agreement and to assume and undertake unconditionally all the Buyer's remaining obligations under the Contract, provided that if such default is one that can not readily be resolved within thirty (30) days and Buyer or Assignee are pursuing a remedy of such default with due diligence and dispatch then you shall have an additional fifteen (15) days to remedy such default.

4.      All notices and communications under this Acknowledgment and Consent will be in writing or some facsimile of writing addressed to the parties at their addresses set out below or most recently notified to each other:

Comerica Bank
100 N.E. 3rd Avenue, Suite 100
Fort Lauderdale, FL 33301
Attn:  Barry W. Shaw, Vice President

Worldspan Marine, Inc.
27222 Lougheed Highway
Maple Ridge, BC V2W 1V9
Attention: Lee Taubeneck, President

5      As of the date of this Acknowledgment and Consent we confirm to you the following:

(a)   As of the date of this Acknowledgment and Consent, the Borrower has paid us the sum of $ 11,131,192.04 representing the Deposit and all payments presently due towards the Final Purchase Price under the terms of Section 4 of the Vessel Construction Agreement.

(b)   The amounts currently due to Builder under the terms of the Vessel Construction Agreement with respect to invoices issued, but not yet paid is $ 1,884,187.00 .

(c)   Subject to the terms of the Vessel Construction Agreement which provide that the billing for the Vessel is on a time and materials basis, as of this date Builder's estimated cost to complete the Vessel in accordance with the terms of the Vessel Construction Agreement is $ 6,516,374.00 .

→ Note: This amount does not include $1,884,187.00 listed in (b) above. (April, May, June invoices)

It does include July Invoice of $788,636.52 due August 31, 2009.

_L.T._

Sincerely,

Worldspan Marine, Inc.

By: _Lee Taubeneck_
Name:  Lee Taubeneck
Title: President

Date: August 14, 2009

514055v2 960766.0213                                    2

*149*

*9895214590*

# PROMISSORY NOTE

$9,400,000.00

August 14, 2009
Executed outside the State of Florida

**FOR VALUE RECEIVED, HARRY SARGEANT, III, and DANIEL SARGEANT** (collectively, the "Borrower"), promises to pay to the order of **COMERICA BANK** (hereinafter referred to as "Lender"), at 100 N.E. 3rd Ave., Suite 100, Fort Lauderdale, FL 33301, or at such other place as Lender may designate in writing to Borrower, the principal sum of the lesser of: (1) **NINE MILLION FOUR HUNDRED THOUSAND AND NO/100 DOLLARS ($9,400,000.00)**, or (2) the amount actually advanced to the Borrower in accordance with the terms of that certain Construction Loan Agreement of even date herewith between Borrower and Lender (the "Construction Loan Agreement", in United States funds, plus interest, costs and expenses as hereinafter provided. Any capitalized terms used herein, and not defined in this Note, shall have the meanings assigned in the Construction Loan Agreement.

     **I. Line of Credit.** Subject to the terms and conditions of this Note, and provided that no Event of Default or Default has occurred and is continuing, Borrower may borrow and Lender may advance (each, an "**Advance**" and together the "**Advances**") to Borrower so long as the total principal balance outstanding under this Note at any one time does not exceed the principal amount stated on the face of this Note, subject to the limitations described in this Note and the Construction Loan Agreement. Lender's obligation to make Advances under this Note shall terminate if a demand for payment is made under this Note or if a Default or Event of Default (as defined in the other Loan Documents (as defined below) under any Loan Document occurs. As of the date of each proposed Advance, Borrower shall be deemed to represent that each representation made in the Loan Documents is true as of such date. The loan evidenced herein, if repaid, may not be re-borrowed.

     **II. Security.** This Promissory Note is secured by the Security described in the Construction Loan Agreement.

     **III. Payment of Principal and Interest.**

         (a)    **Repayment Terms.** On each Payment Date (as defined below) through and including the Maturity Date (as defined below), Borrower shall make monthly payments of interest only on the outstanding principal amount hereunder at the then Applicable Interest Rate (as defined below) under the terms of this Note. The monthly payments of interest are subject to change with each change in the Applicable Interest Rate hereunder, at the discretion of the Lender to an interest amount based on the then Applicable Interest Rate under the terms of this Note. On demand by Lender as described below in the Section titled Demand Note; Remedies (the "**Maturity Date**") the loan evidenced herein shall mature and all outstanding principal, accrued and unpaid interest and costs, fees and expenses due under this Note and the other Loan Documents shall be due and payable.

         Interest shall accrue on the outstanding principal at a floating rate referred to herein as the "Applicable Interest Rate" (as defined below), except as provided with respect to the "Default Rate", and in either case adjusted if necessary so as to not exceed the highest rate permitted by applicable law. Interest shall be computed on the basis of a 360 day year for the actual number of days elapsed in the period. Lender's actual days/360 days computation determines the annual effective interest yield by taking the stated (nominal) interest rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable interest period. Such computation produces an annualized effective interest rate exceeding that of the nominal rate. Notwithstanding any other provision of this Note, however,

513977v2 960766.0213

JUDITH ANN SUTTON
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires Mar. 29, 2014
*ACTING IN THE COUNTY OF WAYNE*

This is Exhibit "G" referred to in the affidavit of Cynthia B. Jones sworn before me at Miller, Canfield, Paddock and Stone, P.L.C. this 7th day of October, 2011

*Judith Ann Sutton*

neither the Applicable Interest Rate nor the Default Rate shall ever exceed the maximum rate allowed by applicable law.

For any Interest Period for which the Applicable Interest Rate is the LIBOR-based Rate, if Lender shall designate a LIBOR Lending Office which maintains books separate from those of the rest of Lender, Lender shall have the option of maintaining and carrying this Note, and the relevant Indebtedness hereunder, on the books of such LIBOR Lending Office.

If, with respect to any Interest Period, Lender determines that, (a) Lender is unable to determine or ascertain the LIBOR Rate for such Interest Period, or (b) by reason of circumstances affecting the foreign exchange and interbank markets generally, deposits in eurodollars in the applicable amounts or for the relative maturities are not being offered to Lender for such Interest Period, or (c) the LIBOR-based Rate will not accurately or fairly cover or reflect the cost to Lender of maintaining any of the Indebtedness under this Note at the LIBOR-based Rate for such Interest Period, then Lender shall forthwith give notice thereof to the undersigned and thereafter, until Lender notifies the undersigned that such conditions or circumstances no longer exist, the Applicable Interest Rate for all Indebtedness hereunder during such period of time shall be as determined by Lender from another recognized source or interbank quotation.

**(b) Definitions.** Unless otherwise defined herein, all capitalized terms used in this Note which are not defined herein shall have the meaning assigned in the Pledge Agreement or other Loan Documents

(1) Applicable Interest Rate. The term **"Applicable Interest Rate"** means, in respect of all or · any part of the Indebtedness hereunder. the LIBOR based Rate plus the Applicable Margin.

(2) Applicable Margin. The **"Applicable Margin"** to be added to the LIBOR Rate for purposes of determining the Applicable Interest Rate, shall be a margin of three hundred basis points (3.00%) provided, however, that such rate shall be reduced by fifty basis points (.50%) to two hundred fifty basis points (2.50%) if Borrower, satisfies the following conditions: (i) establishment of a Comerica securities account or similar investment account with the Lender, and (ii) maintain a minimum average balance on a quarterly basis of at least Five Million U.S. Dollars ($5,000,000). In the event that the Borrower or the guarantor no longer meet the conditions in (i) and (ii) of the preceding sentence, then the Lender in its discretion may increase the Applicable Margin by fifty basis points (50%) to the unadjusted margin.

(3) Business Day. The term **"Business Day"** means any day, other than a Saturday, Sunday or any other day designated as a holiday under Federal or applicable State statute or regulation, on which Lender is open for all or substantially all of its domestic and international business (including dealings in foreign exchange) in Detroit, Michigan, and, in respect of notices and determinations relating to the Applicable Interest Rate and Interest Periods, also a day on which dealings in dollar deposits are also carried on in the London interbank market and on which banks are open for business in London, England.

(4) Default Rate. For purposes of this Note the term "Default Rate" shall mean a rate per annum that is five percentage points (5%) higher than the Applicable Interest Rate, which interest shall be' payable upon demand. The Default Rate shall apply from acceleration until the Obligations or a judgment thereon in favor of Lender have been paid in full.

(5) Interest Period. The term **"Interest Period"** means a period of time not to exceed three (3) months, commencing on the effective date of this Note, and each monthly period thereafter commencing on the last day of the preceding Interest Period then ending, provided that:

(a) any Interest Period which would otherwise end on a day which is not a Business Day shall be extended to the next succeeding Business Day, except that if the next succeeding Business Day falls in another calendar month, the Interest Period shall end on the next preceding Business Day, and when an Interest

Period begins on a day which has no numerically corresponding day in the calendar month during which such Interest Period is to end, it shall end on the last Business Day of such calendar moth;

(b)  each Interest Period after the initial Interest Period shall commence on and end on an installment Payment Date under this Note; and

(c)  no Interest Period shall extend beyond the Maturity Date.

(6)  LIBOR-based Rate.  The term "LIBOR-based Rate" means a per annum interest rate which is equal to the quotient of the following:

(a)  the LIBOR Rate;

divided by

(a)  1.00 minus the maximum rate (expressed as a decimal) during such Interest Period at which Bank is required to maintain reserves on "Euro-currency Liabilities" as defined in and pursuant to Regulation D of the Board of Governors of the Federal Reserve System or, if such regulation or definition is modified, and as long as Bank is required to maintain reserves against a category of liabilities which includes eurodollar deposits or includes a category of assets which includes eurodollar loans, the rate at which such reserves are required to be maintained on such category;

provided, however, in no event and at no time shall the LIBOR-based Rate be less than two percent (2.00%) per annum.

(7)  Libor Lending Office.  Means the Lender's office located in the Cayman Islands, British West Indies, or such other branch of the Lender, domestic or foreign, as it may hereafter designate as its Libor Lending Office by notice to the Borrower.



(8)  Libor Rate.  "LIBOR Rate" means, with respect to any Obligations outstanding under this Note, the per annum rate of interest determined on the basis of the rate for deposits in United States Dollars for a period equal to the relevant Interest Period for such Obligations, commencing on the first day of such Interest Period, appearing on Page BBAM of the Bloomberg Financial Markets Information Service as of 11:00 a.m. (Detroit, Michigan time) (or soon thereafter as practical), two (2) Business Days prior to the first day of such Interest Period.  In the event that such rate does not appear on Page BBAM of the Bloomberg Financial Markets Information Service (or otherwise on such Service), the "LIBOR Rate" shall be determined by reference to such other publicly available service for displaying eurodollar rates as may be agreed upon by Lender and Borrower, or, in the absence of such agreement, the "LIBOR Rate" shall, instead, be the per annum rate equal to the average of the rates at which Lender is offered dollar deposits at or about 11:00 a.m. (Detroit, Michigan time) (or soon thereafter as practical), two (2) Business Days prior to the first day of such Interest Period in the interbank eurodollar market in an amount comparable to the principal amount of the respective LIBOR-based advance which is to bear interest at such LIBOR-based rate and for a period equal to the relevant Interest Period.

The LIBOR Rate for the initial Interest Period shall be determined as of the date of this Note and shall be re-determined and reset for each applicable Interest Period thereafter.  The Applicable Interest Rate shall be adjusted to reflect any changes in the LIBOR Rate and each adjustment shall be effective on the day the change in the LIBOR Rate occurs.

152

(9) Payment Date. The term **"Payment Date"** means the respective monthly payment due dates commencing on September 1, 2009, and the first Business Day of each succeeding month thereafter, until (and including) the Maturity Date.

(10) Indebtedness. The term **"Indebtedness"** means the aggregate of all sums of money at any time or from time to time owing to the Lender under or pursuant to this Note and the other Loan Documents, whether actually or contingently, in the present or in the future.

(11) Obligations. The term **"Obligations"** shall mean (i) all payment and performance obligations of the Borrower and all other third persons under any Loan Document to or for the benefit of the Lender, and (ii) the obligation to pay an amount equal to the amount of any and all damage (other than lost profits) which the Lender may suffer by reason of a breach by the Borrower or any other persons of any obligation, covenant or undertaking with respect to any Loan Document not otherwise included in clause (i), and (iii) all Swap Obligations.

(12) Swap Obligations. The term **"Swap Obligations"** shall mean all obligations under any swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time) between Borrower and Lender, or its affiliates, whenever executed.

(13) Loan Documents. The term **"Loan Documents"** shall mean all documents executed in connection with or related to the loan evidenced by this Note and any prior notes which evidence all or any portion of the loan evidenced by this Note, and any letters of credit issued pursuant to any loan agreement to which this Note is subject, any applications for such letters of credit and any other documents executed in connection therewith or related thereto, and may include, without limitation, a commitment letter that survives closing, a loan agreement, this Note, guaranty agreements, security agreements, security instruments, financing statements, mortgage instruments, any renewals or modifications, whenever any of the foregoing are executed, but does not include swap agreements (as defined in 11 U.S.C. § 101, as in effect from time to time).

(c) **Additional Payment Terms**.  Borrower shall make all monthly payments directly to the Lender at the address of the Lender set forth above, to the attention of such person as Lender may from time to time designate, or at such other place as Lender may from time to time designate. A monthly invoice will be sent to Borrower prior to the date on which the next payment is due to assist Borrower in making the proper payments. The monthly invoices will itemize the interest that will be due for the relevant Interest Period (calculated on the assumption of no change between the invoice date and the due date in the Applicable Interest Rate or Default Rate or in the amount of the principal Indebtedness outstanding), and any other amounts that may then be due. If during the time between the preparation of the monthly invoice and the due date there is a change in the Applicable Interest Rate or Default Rate or in the amount of principal Indebtedness outstanding, or in any other amounts due, then the monthly invoice for the next accounting period will incorporate an appropriate adjustment.

All payments to be made by Borrower to Lender under this Note shall be made in immediately available funds, without set off or counterclaim, and in the event that any payments submitted hereunder are in funds not available until collected, said payments shall continue to bear interest until collected. Borrower authorizes Lender to charge any account(s) of Borrower with Lender for all sums due hereunder when due in accordance with the terms hereof.

The amount from time to time outstanding under this Note, the Applicable Interest Rate, the Interest Period, and the amount and date of any repayment shall be noted on Lender's records, which records shall be conclusive evidence thereof, absent manifest error; provided, however, any failure by Lender to make any such notation, or any error in any such notation, shall not relieve Borrower of its obligations to repay

153

Lender all amounts payable by Borrower to Lender under or pursuant to this Note, when due in accordance with the terms hereof.

Each payment by Borrower shall be applied, first to pay interest due on the date the payment is received; next, to any fees, charges, expenses, advances or other Obligations then due; and the balance, if any, to the unpaid principal.

(d) **Prepayment**. Borrower shall be entitled to make prepayments of principal under this Note at any time or times, without premium or penalty. Each such prepayment must also include all interest accrued and unpaid to the date of payment. All prepayments of principal and accrued interest shall be made at the office of Lender at the address stated in above, or at such other place as from time to time may be designated to Borrower by Lender. Any partial prepayment will be applied first to accrued and unpaid interest, then to any other amounts due hereunder other than principal, and the remaining balance to principal in reverse chronological order in which the installments required hereunder become due. Partial prepayments may reduce the term of the Loan but will not change the amount or the due date of any scheduled monthly payment until the Loan is fully repaid.

(e) **Change in Laws; Regulations, Etc.**

If, after the date hereof, the introduction of, or any change in, any applicable law, rule or regulation or in the interpretation or administration thereof by any governmental authority charged with the interpretation or administration thereof, or compliance by Lender (or its LIBOR Lending Office) with any request or directive (whether or nothaving the force of law) of any such authority, shall make it unlawful or impossible for the Lender (or its LIBOR Lending Office) to make or maintain any advance with interest at the LIBOR-based Rate, Lender shall forthwith give notice thereof to the undersigned.  Thereafter, until Lender notifies the undersigned that such conditions or circumstances no longer exist, the Applicable Interest Rate for all Indebtedness hereunder during such period of time shall be as determined by Lender from another recognized source or interbank quotation.

If the adoption after the date hereof, or any change after the date hereof in, any applicable law, rule or regulation (whether domestic or foreign) of any governmental authority, central bank or comparable agency charged with the interpretation or administration thereof, or compliance by Lender with any request or directive (whether or not having the force of law) made by any such authority, central bank or comparable agency after the date hereof: (a) shall subject Lender to any tax, duty or other charge with respect to this Note or any Obligations hereunder, or shall change the basis of taxation of payments to Lender of the principal of or interest under this Note or any other amounts due under this Note in respect thereof (except for changes in the rate of tax on the overall net income of Lender imposed by the jurisdiction in which Lender's principal executive office is located); or (b) shall impose, modify or deem applicable any reserve (including, without limitation, any imposed by the Board of Governors of the Federal Reserve System), special deposit or similar requirement against assets of, deposits with or for the account of, or credit extended by Lender, or shall impose on Lender or the foreign exchange and interbank markets any other condition affecting this Note or the Obligations hereunder; and the result of any of the foregoing is to increase the cost to Lender of maintaining any part of the Obligations hereunder or to reduce the amount of any sum received or receivable by Lender under this Note by an amount deemed by the Lender to be material, then Borrower shall pay to Lender, within fifteen (15) days of Borrower's receipt of written notice from Lender demanding such compensation, such additional amount or amounts as will compensate Lender for such increased cost or reduction.  A certificate of Lender, prepared in good faith and in reasonable detail by Lender and submitted by Lender to Borrower, setting forth the basis for determining such additional amount or amounts necessary to compensate Lender shall be conclusive and binding for all purposes, absent manifest error.

In the event that any applicable law, treaty, rule or regulation (whether domestic or foreign) now or hereafter in effect and whether or not presently applicable to Lender, or any interpretation or

513977v2 960766.0213                                        5

administration thereof by any governmental authority charged with the interpretation or administration thereof, or compliance by Lender with any guideline, request or directive of any such authority (whether or not having the force of law), including any risk-based capital guidelines, affects or would affect the amount of capital required or expected to be maintained by Lender (or any corporation controlling Lender), and Lender determines that the amount of such capital is increased by or based upon the existence of any obligations of Lender hereunder or the maintaining of any Obligations hereunder, and such increase has the effect of reducing the rate of return on Lender's (or such controlling corporation's) capital as a consequence of such obligations of Lender or the maintaining of any Obligations hereunder to a level below that which Lender (or such controlling corporation) could have achieved but for such circumstances (taking into consideration its policies with respect to capital adequacy), then Borrower shall pay to Lender, within fifteen (15) days of Borrower's receipt of written notice from Lender demanding such compensation, additional amounts as are sufficient to compensate Lender (or such controlling corporation) for any increase in the amount of capital and reduced rate of return which Lender reasonably determines to be allocable to the existence of any obligations of the Lender hereunder or to maintaining any Obligations hereunder. A certificate of Lender as to the amount of such compensation, prepared in good faith and in reasonable detail by the Lender and submitted by Lender to Borrower, shall be conclusive and binding for all purposes absent manifest error.

(f) **Late Charges**. In addition to the above, Lender may collect a late charge not to exceed an amount equal to five percent (5%) of any installment payment which is not paid within ten (10) days of the due date thereof to cover the extra expense involved in handling delinquent payments, provided that collection of said late charge shall not be deemed a waiver by Lender of any of its other rights under this Note or any instrument given to secure this Indebtedness.

**IV. Demand Note; Remedies.** This is a demand Note and all obligations of Borrower hereunder shall become immediately due and payable upon demand by Lender. In addition, the obligations of Borrower hereunder shall automatically become immediately due and payable if Borrower or any Guarantor or endorser of this Note commences or has commenced against it a bankruptcy or insolvency proceeding.

Upon demand by the Lender or the occurrence of a default in the payment of the Obligations ("Default" or "Event of Default") or a Default or Event of Default (as defined in the Loan Documents) under any other Loan Document or a default in the payment or performance of any obligation under any other loans, contracts or agreements of Borrower with Lender or its affiliates, as in effect from time to time, or under any other obligations under any loans, contracts or agreements of any other entity with Lender if such obligations or loans, contracts or agreements are guaranteed by Borrower (whether now existing or created) or upon demand by Lender, Lender may at any time thereafter, take the following actions: (a) Declare any or all of the Indebtedness to be immediately due and payable (notwithstanding any provisions contained in the evidence of it to the contrary); (b) Accelerate the maturity of this Note and, at Lender's option, any or all other Obligations, but not Swap Obligations, which Swap Obligations shall be due in accordance with and governed by the provisions of said swap agreements; whereupon this Note and the accelerated Obligations shall be immediately due and payable; provided, however, if the Event of Default or Default is based upon a bankruptcy or insolvency proceeding commenced by or against Borrower or any guarantor or endorser of this Note, all Obligations (other than Swap Obligations) shall automatically and immediately be due and payable; (c) Foreclose its security interest or lien against the property and collateral described in any instrument given to secure this Indebtedness or the indebtedness evidenced by the Renewal Promissory Note or Borrower's or any guarantor's accounts with Lender or any Lender affiliate without notice; and (d) Exercise any rights and remedies as provided under this Note, the Pledge Agreement, the Mortgage, the Snowmass Mortgage, the Trust Mortgage, any guaranty and any other Loan Document or as provided by law or equity.

Borrower hereby expressly waives notice of default, presentment or demand for prepayment, demand, notice of nonpayment or dishonor, protest and notice of protest, or any other notice or demand.

513977v2 960766.0213                                         6



No delay or omission on the part of Borrower or Lender in exercising their rights under this Note, or delay or omission on the part of Borrower or Lender, in exercising their rights under any other Loan Document, or course of conduct relating thereto, shall operate as a waiver of such rights or any other right of Borrower or Lender, nor shall any waiver by Borrower or Lender, of any such right or rights on any one (1) occasion be deemed a bar to, or waiver of, the same right or rights on any future occasion.

The Borrower promises to pay all costs of collection, including reasonable attorneys' fees incurred by Lender in connection with the enforcement or presentation of any of Lender's rights or remedies hereunder or any motion, proceeding or other activity of any kind in connection with a bankruptcy proceeding or case arising out of or relating to any petition under Title 11 of the United States Code, as the same shall be in effect from time to time or any similar law.

**V.  General Provisions.**

Time is of the essence of this Note.

This Promissory Note may be executed in counterparts by the Borrower and each executed counterpart when taken together shall be considered one instrument.

This Note shall be construed in accordance with and governed by the laws of the State of Florida. Venue for any dispute arising out of this Note shall be the Circuit Court located in Broward County, Florida, and each party consents to the jurisdiction of such court.

Anything herein to the contrary notwithstanding, if during any period for which interest is computed hereunder, the amount of interest computed on the basis provided for in this Note, together with all fees, charges and other payments which are treated as interest under applicable law, as provided for herein or in any other document executed in connection herewith, would exceed the amount of such interest computed on the basis of the Highest Lawful Rate, Borrower shall not be obligated to pay, and the Lender shall not be entitled to charge, collect, receive, reserve or take interest in excess of the Highest Lawful Rate and, during any such period, the interest payable hereunder shall be computed on the basis of the Highest Lawful Rate. As used herein, "Highest Lawful Rate" means the maximum non-usurious rate of interest, as in effect from time to time, which may be charged, contracted for, reserved, received or collected by the Lender in connection with this Note under applicable law.

**THE BORROWER HEREBY AGREES TO WAIVE THE RIGHT TO A TRIAL BY JURY IN ANY COURT AND IN ANY ACTION OR PROCEEDING OF ANY TYPE IN WHICH THE BORROWER, THE LENDER OR ANY OF THEIR RESPECTIVE SUCCESSORS OR ASSIGNS IS A PARTY, AS TO ALL MATTERS AND THINGS ARISING DIRECTLY OR INDIRECTLY OUT OF THIS NOTE, ANY GUARANTY OR THE OTHER LOAN DOCUMENTS.**

[signature page to follow]

**IN WITNESS WHEREOF,** the undersigned, have executed this Note as of the day and year first above written.

**BORROWER:**

By:_____

Name:  Harry Sargeant, III

By:_____

Name:  Daniel Sargeant

Florida documentary stamp taxes are not due on this Note as the Borrowers' executed and delivered the Note to the Lender outside the State of Florida.

**EXHIBIT A**

**Disbursements:**

Closing Advance Amount

| | |
|---|---|
| 1. To Builder, Worldspan Marine, Inc., via wire transfer | 1,000,000.00 |

      wire instructions:

| | |
|---|---|
| Beneficiary: | Worldspan Marine, Inc. |
| Beneficiary Address: | 27222 Lougheed Hwy |
| | Maple Ridge, BC  V2W 1V9 |
| | Canada |
| Beneficiary Account: | 0004 4687-261 |
| Beneficiary Bank: | Bank of Montreal |
| Beneficiary Bank Address: | 595 Burrard Street |
| | Vancouver, BC  V7X 1L7 |
| | Canada |
| Beneficiary Bank Swift Code | BOFMCAM2 |
| Intermediary Bank: | Wachovia Bank |
| Intermediary Bank Swift Code | PNBPUS3NNYC |

| | |
|---|---|
| 2. to Bank, via intra bank transfer | $12,500.00 |
| 3. To Tripp Scott, P.A., deposit to Comerica Bank Trust Account | $11,985.00 |

      wire instructions
      Comerica Bank
      100 N.E. 3rd Avenue
      Fort Lauderdale, FL 33301
      Name of Account: Tripp, Scott, PA Trust Account
      ABA No.: 067012099
      Account No.: 1811017324

| | |
|---|---|
| **Total Closing Disbursements** | $24,485.00 |

Acknowledged and agreed to:

Borrower's Intials:

By: _____

158



Comerica

June 8, 2011

Harry Sargeant, III
Daniel Sargeant
3020 North Military Trail, Suite 100
Boca Raton, FL 33431

      Re:    Financing Arrangements among Comerica Bank ("Bank"), and Harry Sargeant, III, and Daniel Sargeant ("Borrowers")

Dear Messrs. Sargeant:

      Please refer to Promissory Note dated August 14, 2009, as amended (the "Note"), Construction Loan Agreement dated August 14, 2009, as amended (the "Loan Agreement"), Assignment of Security Agreement & Mortgage dated August 14, 2009, (the "Mortgage Assignment") and to any and all other documents, instruments and agreements executed in connection with the financing arrangements from Bank to Borrowers (collectively, the "Loan Documents"). All amounts due from Borrower to Bank, whether now or in the future, contingent, fixed, primary and/or secondary, including, but not limited to, principal, interest, inside and outside counsel fees, audit fees, costs, expenses and any and all other charges provided for in the Loan Documents shall be known, in the aggregate, as the "Liabilities". All capitalized terms not defined in this letter ("June 2011 Extension Letter") shall have the meanings ascribed to them in the Loan Documents.

      The Vessel has not been delivered to Borrowers by April 1, 2011, as required in the January 15, 2011, Extension Letter. In addition, the Builder, being Worldspan Marine, Inc., is the subject of insolvency proceedings currently pending in British Columbia (the "Insolvency Proceeding"). Various parties have asserted liens against the Vessel. Borrowers seek to have the Vessel completed during the Insolvency Proceeding.

      Bank and Borrowers agree:

1.    The "Delivery Date" is amended to be April 1, 2012.

2.    . The "Review Date" is amended to be March 1, 2012. Notwithstanding the Review Date, Borrowers acknowledge that Bank will monitor and review the status of the Loan, the status of the Insolvency Proceeding, and the status of the Vessel at such frequency as Bank in its discretion determines. Borrowers further acknowledge that Bank and Borrowers will continue their discussions regarding additional collateral to secure the Liabilities. Borrowers further acknowledge that Bank has the right to demand payment under the Note at any time prior to the new Review Date and prior to the new Delivery Date.

3.    Borrowers acknowledge that the Liabilities as of June 8, 2011, include $9,400,000.00 (US) in principal plus accrued interest in the amount of $5,982.77 (US). The foregoing amounts are exclusive of interest accruing after June 8, 2011, and are exclusive of Bank's costs and attorney fees, including costs and attorney fees incurred in the Insolvency Proceeding and in protecting Bank's security interest and mortgage lien in the Vessel.

4.    Borrowers acknowledge that Bank has no obligation to undertake any action in the Insolvency Proceeding, or otherwise to protect its security interest and mortgage lien in the Vessel. Borrowers

19,137,826.3\147420-00021

This is Exhibit "H" referred to in the affidavit of Cynthia B. Jones sworn before me at Miller, Canfield, Paddock and Stone, P.L.C. this 7th day of October, 2011

*Judith Ann Sutton*

JUDITH ANN SUTTON
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires Mar. 29, 2014
ACTING IN THE COUNTY OF WAYNE

June 8, 2011
Page Two



further acknowledge that Bank's actions to date in the Insolvency Proceeding were at the request of Borrowers, and not as a result of any obligation of Bank to do so. Borrowers further acknowledge that Bank, at any time in the future, may elect to act or not to act in the Insolvency Proceeding without discharging Borrowers' obligation under the Note to pay the Liabilities upon Bank's demand.

5.       Bank has no obligation to make any further Advances under the Note, including any Advances to further the building of the Vessel.

6.       Borrowers acknowledge and reaffirm the demand nature of the Note and that Bank in its sole discretion may demand full and immediate payment of the Liabilities at any time, and for any reason or no reason.

7.       Borrowers agree that no extension or indulgence to Borrowers (or either of them) or release, substitution or nonenforcement of any security, or release or substitution of either Borrower, whether with or without notice, shall affect the obligations of Borrowers. Borrowers waive all defenses or rights to discharge available under Florida Statutes Section 673.605 of the Florida Uniform Commercial Code and under any similar statute, regulation or rule of law that might be applicable where the Vessel is located, and waive all other suretyship defenses or rights to discharge. Borrowers waive presentment, demand, protest, notice of dishonor, notice of demand or intent to demand, notice of acceleration or intent to accelerate, and all other notices.

8.       Borrowers waive, discharge, and forever release Bank, Bank's current and former employees, officers, directors, attorneys, stockholders, and their successors and assigns, from and of any and all claims, causes of action, allegations or assertions that either Borrower has or may have had at any time up through and including the date of this June 2011 Extension Letter, against any or all of the foregoing, regardless of whether any such claims, causes of action, allegations or assertions are known to either Borrower and whether any such claims, causes of action, allegations or assertions arose as result of Bank's actions or omissions in connection with any of the Loan Documents, or any amendments, extensions or modifications thereto, or Bank's administration of the Liabilities.

9.       Each Borrower acknowledges that the term "Mortgagee" in the Mortgage Assignment means the Secured Party as defined in the Mortgage Assignment.

10.      Except as expressly amended by the terms of this June 2011 Extension Letter, all terms and conditions of the Loan Agreements, as previously amended, remain in full force and effect. In the event of a conflict between a term in this June 2011 Extension Letter and a term in any of the Loan Documents, the June 2011 Extension Letter shall control.

11.      This agreement may be executed in counterparts and facsimile signatures shall be treated the same as originals. Borrower shall deliver to Bank the original of any facsimile signature by June 18, 2011.

12.      This agreement shall be construed in accordance with and governed by the internal laws of the Sate of Florida without giving effect to its conflict of law principles.

19,137,826.3\147420-00021

June 8, 2011
Page Three



Please call me if you have any questions or wish to discuss.  Please sign and return this letter agreement to me by June 15, 2011.

Very truly yours,

Cynthia B. Jones, Vice President,
500 Woodward MC 3205
Detroit, MI 48226
(313)222-3826
(313)222-5706 fax

AGREED:

Harry Sargeant, III
Dated:  June ___, 2011


Daniel Sargeant
Dated:  June ___, 2011

19,137,826.3\147420-00021

June 8, 2011
Page Three



Please call me if you have any questions or wish to discuss.  Please sign and return this letter agreement to me by June 15, 2011.

Very truly yours,

Cynthia B. Jones, Vice President,
500 Woodward MC 3205
Detroit, MI  48226
(313)222-3826
(313)222-5706 fax

AGREED:

Harry Sargeant, III
Dated:  June ___ 2011

Daniel Sargeant
Dated:  June ___, 2011

19,137,826.3\147420-00021