UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 18-21924-CIV-MORENO/LOUIS

WORLDSPAN MARINE INC., a
Canadian corporation, CSPAN FINANCIAL,
LLC, a Florida limited liability company,
and WEDMORE FINANCIAL, LLC, a
Florida limited liability company,

    Plaintiffs,

vs.

COMERICA BANK, a Texas banking
Association, KURT YOUNKER, an
Individual, BARRY SHAW, an individual,
CYNTHIA JONES, an individual, HARRY
SARGEANT III, an individual, DEBORAH
SARGEANT, an individual, MERVYN
MONGER, an individual, and KEVIN
KIRKEID, an individual,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This cause comes before the Court upon Defendants, Comerica Bank, Barry Shaw, Cynthia Jones, and the Estate of Kurt Younker's[1] Motion to Dismiss the Complaint (ECF No. 45); and Defendants, Harry Sargeant III, Deborah Sargeant, Mervyn Monger, and Kevin Kirkeide's[2] Motion to Dismiss the Complaint (ECF No. 47). These matters were referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and the Magistrate Judge

---

[1] Collectively, "Comerica Defendants."
[2] Collectively, "Sargeant Defendants."

1

Rules of the Local Rules of the Southern District of Florida, by the Honorable Federico A. Moreno, United States District Judge for a Report and Recommendation (ECF No. 64). A hearing on these motions was conducted on January 30, 2019. Having carefully considered the motions, the record as a whole, and being otherwise fully advised in the premises, the undersigned recommends that Defendants' motions be **GRANTED**, and that the Complaint be dismissed with leave to amend.

**I.     BACKGROUND**

This dispute arises from a purported unlawful bidding scheme following a contract for the construction of a superyacht. ECF No. 1 ("Compl."). Generally, credit bidding describes the process of a secured creditor exercising its right to bid at public auction for an asset it has an interest in.[3] Plaintiffs allege herein that they were injured by the scheme of two secured creditors of the yacht to drive down its market price, to enable those creditors' ability to purchase the yacht below market value.

The Complaint allegations begin in February 2008, when Defendant Harry Sargeant III and Plaintiff Worldspan Marine, Inc., a Canadian corporation ("Worldspan") entered into a Vessel Construction Agreement for the construction of a 142-foot yacht in Canada. Compl. at ¶ 292. Pursuant to the terms of the Agreement, title to the yacht would remain with Worldspan until it was completed and delivered; Defendant Sargeant received a builder's mortgage to hold until delivery and transfer of the title.

Between February 2008 and August 2009, Sargeant paid Worldspan $11 million towards the construction of the superyacht. *Id.* at ¶ 300. In 2009, Sargeant applied for a construction loan from Defendant Comerica Bank, who required that Sargeant assign his interests in the superyacht to Comerica as a condition of the loan. *Id.* at ¶ 300. Under the terms of the Construction Agreement,

---

[3] *See In re SunCruz Casinos, LLC*, 298 B.R. 833, 838 (S.D. Fla. 2003) (defining credit bidding pursuant to 11 U.S.C. § 363(k) as a secured creditor's right to bid at a sale of an asset over which the creditor has a secured interest in).

Sargeant needed written consent from Worldspan to execute an assignment of his interest in the yacht. Thus, Sargeant, accompanied by Comerica's representative Barry Shaw, met with Worldspan's representative for the purpose of obtaining consent to the assignment. *Id.* at ¶ 245. The Complaint alleges that during this meeting, Sargeant and Shaw represented to Worldspan that the assignment was a secure way to guarantee funding of the superyacht. *Id.* at ¶ 250. Worldspan gave the requested consent, and Comerica placed a lien on the yacht. Comerica paid the proceeds of the loan, approximately $9 million, to Worldspan towards the construction of the superyacht. *Id*. at ¶ 300.

Over the following year, Worldspan and Sargeant's relationship deteriorated over the increasing costs of construction. Construction ceased, and a flurry of Canadian legal proceedings ensued. *Id.* at ¶¶ 306-310. The first was filed in April 2011: Sargeant filed an action in Canadian state court against Worldspan, and its two brand affiliates, Crescent and Queenship, for breach of contract for failure to complete the yacht; Worldspan filed a counterclaim arguing that Sargeant owed Worldspan $4.9 million for work performed under the contract. *Id*. at ¶ 311.

In May 2011, a subcontractor brought an *in rem* admiralty action against Worldspan in a federal court of Canada. The federal court ordered the seizure and sale of the vessel and directed all interested creditors to make their claims and assert their interests through affidavits. *Id*. at ¶ 314. Worldspan, Sargeant, and a third-party creditor with a judgment against Sargeant, filed affidavits in support of their interests in the vessel.[4] *Id*. The Canadian federal court determined that Sargeant and Comerica had interests that took priority over Worldspan and other subcontractors' interests and ordered the marketing and auction of the vessel. *Id*. at ¶ 314.

Sargeant and Comerica objected to the sale and marketing of the superyacht, purposefully

---

[4] The Canadian federal court denied the third-party creditor's request to intervene in the matter.

delaying the sale and driving down the price, through fraudulent appraisals and false affirmations to the court. Plaintiffs allege that despite Sargeant and Comerica's best efforts to block the sale, the Canadian federal court ordered the yacht to be sold to an unrelated third party for $5 million. *Id*. at ¶ 325.

In 2011, Worldspan and Sargeant were involved in a separate insolvency action analogous to a Chapter 11 bankruptcy proceeding, during which Sargeant petitioned the court to appoint a receiver to manage Worldspan's assets. *Id.* at ¶ 120. Plaintiffs allege that during this proceeding, Sargeant supported his petition with the false testimony of Marvyn Monger, Sargeant's employee, who testified that Worldspan owed Sargeant millions of dollars from the breach of the vessel construction contract. *Id*. The court rejected Sargeant's petition and Worldspan's management remained intact. The Complaint alleges that although Comerica did not participate in the bankruptcy proceeding, it was aware of Sargeant and Monger's false statements to the Court regarding Sargeant's rights pursuant to the assignment. *Id*. at ¶ 122. In 2014, Sargeant filed a second breach of contract suit against Worldspan's individual managers. All the Canadian proceedings remain pending. *See* Plaintiffs' Response in Opposition to Comerica Defendant's Motion to Dismiss (ECF No. 68, p. 14).

### Summary of Claims

Plaintiffs Worldspan Marine, Inc., CSPAN Financial, LLC, and Wedmore Financial, LLC filed the subject Complaint, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964, Florida Racketeer Influenced and Corrupt Organizations Act, Fla. Stat. § 772.103, fraud, and conspiracy against all Defendants. The Complaint alleges that Defendant Sargeant, aided and abetted by Deborah Sargeant, Kevin Kirkeide, and Mervyn Monger, conspired with the Comerica Defendants to trick Worldspan into

consenting to the assignment of Sargeant's rights to Comerica for the purpose of subjecting Worldspan's interest in the vessel to Sargeant and Comerica's security interests and shielding Sargeant from a judgment against him. The Complaint further claims that Sargeant intended to breach the contract and bring legal proceedings against Worldspan so that Worldspan would lose its title to the vessel and Sargeant could purchase the vessel at a lower market price and without paying Worldspan for the work performed. Moreover, Plaintiffs allege that the funds Sargeant and Comerica paid Worldspan were laundered monies, obtained through another illegal credit bid scheme, and subjected Worldspan to an *in rem* proceeding. Plaintiffs allege economic damages suffered by all three entities as a result of the assignment and Sargeant's intentional devaluation of the yacht's market value. Compl. at ¶¶ 304, 323.

## II. DISCUSSION

In their motions, Defendants assert three grounds for dismissal: (1) the Complaint fails to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure because it is a shotgun pleading; (2) the Complaint fails to state a claim for which relief can be granted in violation of Rule 12(b)(6) of the Federal Rules of Civil Procedure; and (3) all of Plaintiffs' claims are barred by the statute of limitations.[5]

### A. Rule 8(a)(2)

Defendants challenge the Complaint as a shotgun pleading, arguing that Plaintiffs allege vague and immaterial allegations, which they fail to connect to specific Defendants' misconduct as to each count, making it impossible for the Court or Defendants to understand Plaintiffs' basis for relief. The Court agrees.

---

[5] Although both sets of Defendants bring separate motions to dismiss, the motions are substantively identical in their arguments for dismissal. However, the Comerica Defendants alone challenge Plaintiffs' RICO standing on the basis that any injury caused occurred in Canada, and, as such, Plaintiffs additionally cannot establish a domestic injury as required by 18 U.S.C. § 1964(c).

Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief" using allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). The Supreme Court has explained that Rule 8 does not require "detailed factual allegations," but rather demands "more than unadorned, the-defendant-unlawfully-harmed me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Shotgun pleadings violate Rule 8 by failing to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests on. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018). Generally, shotgun complaints contain several counts, each count incorporating by reference the allegations of previous counts, resulting in a situation where it impossible for the court or the Defendant to know which allegations are intended to support which claims for relief. *Fox v. Loews Corp.*, 309 F. Supp. 3d 1241, 1245 (S.D. Fla. 2018) (citing *Strategic Income Fund, LLC v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)). Courts in the Eleventh Circuit have little tolerance for shotgun pleadings as they waste judicial resources, inescapably broaden the scope of discovery, and ultimately wreak havoc on judicial dockets. *Vibe Micro, Inc.*, 878 F.3d at 1294-95.

The Complaint is an impermissible shotgun pleading that advances six counts and contains 600 paragraphs. Plaintiffs fail to connect the extraordinary number of factual allegations to the misconduct of each Defendant under the individual counts of the Complaint, thereby making it impossible for the Court or Defendants to determine Plaintiffs' grounds for relief. Contributing to this confusion is the fact that Plaintiffs incorporate each of the 538 general paragraphs into each count, the result being that each count is replete with factual allegations that are not possibly material to that specific count, and that any allegations that are material are buried within the extraneous information. For example, Count III alleges fraud against Defendants Comerica,

6

Sargeant, and Shaw, but incorporates paragraphs 1 through 542 of the Complaint, which include information regarding the misconduct of other Defendants and nonparties, none of which seemingly relate to Count III. For this reason alone, the Court can dismiss the Complaint as a shotgun pleading. *See Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) ("Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense."); *Fox*, 309 F. Supp. 3d at 1245 ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts …contain irrelevant factual allegations and legal conclusion.") .

Another deficiency of the Complaint is that while there are three named Plaintiffs and six named Defendants, the Complaint impermissibly groups together the Plaintiffs and the Defendants, failing to distinguish which Plaintiffs assert which claims against the specific Defendants, and how each Plaintiff has been injured by the respective conduct. For instance, in Counts I, II, and V, all Plaintiffs allege federal and state RICO violations, based on several predicate acts, against all Defendants; however, in all counts, Plaintiffs fail to identify what acts by a specific Defendant amount to a predicate act that targeted or injured a particular Plaintiff. This deficiency is particularly troubling as to Defendants Deborah Sargeant, Cynthia Jones, and Kurt Younker. While Plaintiffs generally allege that these Defendants participated in the illegal scheme, the Complaint specifically alleges, for example, that Deborah Sargeant is a housewife and shares a bank account with her husband, and has previously had a bankruptcy proceeding against her. Compl. at ¶¶ 6, 43. None of these allegations, collectively or individually, provide sufficient

factual bases for the counts against Deborah Sargeant.[6] Similarly, the Complaint is scarce of factual allegations describing Jones' or Younker's involvement in a RICO conspiracy. At most, the Complaint alleges that both Jones and Younker worked at different Comerica Bank branches and may have been aware of Sargeant's actions. These threadbare allegations are not enough to survive a Rule 8 challenge. Counts III, IV and VI of the Complaint suffer from the same deficiency. In Count IV, Worldspan alleges a claim of conspiracy to defraud against all Defendants but fails to identify each Defendant's misconduct or the joint actions that gave rise to the alleged conspiracy.

Accordingly, dismissal is warranted. *See Marrero v. Benetiz*, 17-CV-21026, 2017 WL 7796341, at *4 (S.D. Fla. Aug. 3, 2017) (dismissing amended complaint as a shotgun pleading where plaintiffs improperly grouped twelve plaintiffs and five defendants, thereby failing to allege which plaintiffs were bringing claims against specific Defendants or how each plaintiff had been injured by a defendant's conduct).

Dismissal for failure to satisfy Rule 8 generally requires that the court afford the plaintiff leave to amend a first complaint. "When faced with a shotgun pleading, a district court must order a litigant to replead for a more definite statement of the claim." *Luft v. Citigroup Global Markets Realty Corp.*, 620 F. App'x 702, 704 (11th Cir. 2015). Accordingly, the undersigned recommends that the Court dismiss the Complaint with leave to amend, and instruct Plaintiffs that an amended complaint must include only factual allegations that support each of their claims, without inclusion of nonrelated lawsuits, parties, or events. The amended complaint must also clearly, simply, and

---

[6] To the extent that Defendants argue that Mrs. Sargeant's marital union would categorically exempt her from liability in this RICO claim, the argument is foreclosed by Eleventh Circuit precedent. *See Al-Rayes v. Willingham*, 914 F.3d 1302,1308 (11th Cir. 2019).

concisely state which allegations support each claim. Finally, any amended complaint must clearly allege what conduct each Defendant is alleged to have committed that gives rise to each claim.

Because leave to amend is recommended, the Court further analyzes the deficiencies raised in Defendants' motions to dismiss based on Rule 12(b)(6), as repetition of such deficiencies would again warrant dismissal. *See Fox*, 309 F. Supp. 3d at 1245 ("Nevertheless, the Court addresses the Amended Complaint's five claims and the parties' arguments in order to give Plaintiff direction on how to proceed with a final, amended pleading…").

### B. Rule 12(b)(6)

To survive a 12(b)(6) motion to dismiss, a complaint must contain facts sufficient to "state a claim for relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This requires a plaintiff to allege facts sufficient to raise grounds for relief that is plausible on its face. *Ashcroft*, 556 U.S. at 678. The facts alleged must allow a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Id.* When considering a motion to dismiss, the reviewing court is limited to the facts contained in the complaint and the attached exhibits. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). The facts alleged are taken as true and all reasonable inferences are drawn in plaintiffs' favor. *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

#### 1. Federal RICO Claims

Count I of the Complaint alleges RICO violations pursuant to 18 U.S.C. §§ 1962(c), 1964(c), and Count II alleges violations pursuant to 18 U.S.C. § 1962(d). Notwithstanding the Complaint's apparent reliance on 18 U.S.C. §§ 1962 (c) and (d), which do not provide a private cause of action, the Court reviews Plaintiffs' private RICO claim pursuant to 18 U.S.C. § 1964.

RICO is grounded on the concept of preventing and punishing racketeering activity. *RJR*

*Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2096 (2016). The statute defines "racketeering activity" to include federal and state offenses, which are listed in § 1961(1), and are generally referred to as "predicate acts." *Id*. A predicate offenses violates RICO when it is part of a "pattern of racketeering activity," which is defined as a series of related predicate acts that taken as a whole demonstrate the existence or threat of continued criminal activity. *Id*. at 2097.

Section 1962 promulgates specific prohibitions aimed at several ways in which a pattern of racketeering activity can be used to participate in, control, or operate an enterprise which affects interstate or foreign commerce. 18 U.S.C. §§ 1962(a)-(d). Section 1962(a) makes it unlawful to invest income derived from a pattern of racketeering activity in an enterprise. Section 1962(b) makes it unlawful to acquire or maintain an interest in an enterprise through a pattern of racketeering activity. Section 1962(c) makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity. Section 1962(d) makes it unlawful to conspire to violate any of the three previous prohibitions. Violations of Section 1962 are subject to criminal penalties. 18 U.S.C. §§ 1962(a)-(d); *RBJ Nabisco, Inc.*, 136 S. Ct. at 2097.

18 U.S.C. § 1964(c) provides a cause of action for private plaintiffs who have been injured in their business or property because of conduct that would violate Section 1962. *See* 18 U.S.C. § 1964; *In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1282 (S.D. Fla. 2003). A well-pled civil RICO claim alleges the following elements: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in or participates in (6) an 'enterprise' (7) the activities of which interstate or foreign commerce." *McCulloh v. PNC Bank, Inc.*, 298 F.3d 1217, 1225 (11th Cir. 2002). Further, the alleged predicate acts must amount to or otherwise pose a threat of a continuing

racketeering activity. *Carter v. MGA, Inc.*, 189 F. App'x 893, 894 (11th Cir. 2006). "Continuity is both a closed – and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. In. v. Nw. Bell Tel Co.*, 492 U.S. 229, 241 (1989).

Plaintiffs allege RICO violations based on the following predicate acts: (1) money laundering; (2) wire fraud; (3) mail fraud; (4) violations of the Travel Act; (5) extortion; and (6) threat involving murder. The Complaint further alleges that Plaintiffs were collectively injured through the Defendants' predicate acts (ECF No. 1 ¶¶ 539-542, 555). Plaintiffs characterize their injury as consisting of the monetary damages stemming from the assignment of the construction contract and the undervalued sale of the yacht, both of which allegedly "destroyed" Worldspan. *Id*. In their motions to dismiss, Defendants challenge Plaintiffs' RICO claims on the basis that Plaintiffs lack standing and that Plaintiffs failed to sufficiently plead each predicate act giving rise to their RICO claims.

### a. Standing

Both motions to dismiss seek dismissal on the grounds that Plaintiffs lack standing to bring RICO claims because none of the three Plaintiffs were the direct victims of any of the Defendants' individual misconduct. The Comerica Defendants also challenge Plaintiffs' RICO standing on the basis that Plaintiffs have failed to allege that any suffered a domestic injury. Plaintiffs argue that their injury consists of monetary damages, resulting from the assignment of the construction contract by Sargeant to Comerica, and culminating in the undervalued sale of the superyacht. Plaintiffs claim that Worldspan, the entity with an interest in the vessel, was directly harmed and CSPAN and Wedmore, as assignees of Worldspan's assets, were also injured. Compl. at ¶¶ 330-335. Further, Plaintiffs argue that their collective injuries are domestic because CSPAN and

11

Wedmore are Florida companies. Plaintiffs further argue that some of the unlawful conduct occurred within the United States.

A RICO plaintiff is only entitled to recover under the statute if he has been injured in his business or property by the conduct of the alleged misconduct. *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016) (citing *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). Thus, a defendant who commits an act of racketeering is not liable to everyone he might have injured through other conduct, nor is the defendant liable to persons he has not injured. *Id*. Accordingly, a RICO complaint must plead sufficient facts to give rise to a reasonable inference that the alleged racketeering activity was the proximate cause of plaintiff's injuries. *Id*. (citing *Simpson v. Sanderson Farms Inc.*, 744 F.3d 702, 712 (11th Cir. 2014)). Plaintiffs here have not alleged facts sufficient to show that each Plaintiff suffered an injury was directly caused by any Defendant's conduct.

The Complaint alleges that Worldspan, who was a party to the construction contract and had an interest in the vessel, was harmed financially because of Defendants' misrepresentations regarding the assignment of rights and intentional devaluation of the yacht. Compl. at ¶¶ 304, 323. But this conclusory allegation fails to identify the injury or facts on which Plaintiff relies to show the injury was caused by any Defendant. It is not sufficient to allege general financial damages resulting from the actions of multiple defendants; the Complaint should clearly identify the injury suffered and the predicate acts from which the injury flowed from. *State of Fla., Office of Atty. Gen., Dep't of Legal Affairs v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1300 (S.D. Fla. 2005). Additionally, while damages for work performed may be an injury in fact, the Complaint does little to connect Worldspan's injury to a Defendant's specific actions, therefore failing to establish proximate cause. The mere fact that Defendants committed wrongdoings does not

ineluctably give rise to a RICO injury; there must be a factual connection to Plaintiffs' injuries. *See Ray*, 836 F.3d at 1350 (concluding that plaintiff failed to plead a RICO injury where the complaint merely alleged paying a usage fee as a result of defendant's misrepresentations).

The allegations pertaining to injury suffered by Plaintiffs CSPAN and Wedmore are even less clear. The Complaint alleges that Worldspan assigned certain assets and interests, including the brands Queenship and Crescent, to CSPAN, a Florida limited liability company; this forms the factual basis for the alleged financial injury to CSPAN. Compl. at ¶¶ 331, 333. The Complaint lacks sufficient description of the assets, the assignment, or how the assets were impacted by Defendants' actions for the Court to decipher whether CSPAN suffered any cognizable injury, or who caused that injury. Similarly, Wedmore is alleged only to be a shareholder in Worldspan. A shareholder's injury is derivative or any injury suffered by a corporation targeted by RICO violations; it is not actionable in a direct, as opposed to derivative, action. *See Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898, 906 (11th Cir. 1998). Plaintiffs offer no grounds to distinguish *Bivens'* applicability to Wedmore's absence of RICO injury. As pled, Wedmore lacks cognizable RICO injury and cannot maintain its RICO claim.

Finally, Defendants argue no domestic injury has been alleged. In *RJR Nabisco, Inc.*, the Supreme Court held that a private RICO plaintiff must allege and prove a domestic injury, without deciding whether a domestic injury occurred in that case. 136 S. Ct. at 2111. Courts in this Circuit have applied the holding in *RJR Nabisco, Inc.*, to other private RICO actions. *See GoITV, Inc.*, 2018 WL 1393790, at *14; *Lan Li v. Walsh*, No. 16-81871-CIV, 2017 WL 3130388, at *10 (S.D. Fla. July 24, 2017) (finding no domestic injury alleged where Iranian and Chinese Immigrant investors were injured abroad because they did not allege an economic impact felt in the United States, nor did they allege they were working, traveling, or doing business in the United States at

13

the time); *Absolute Activist Value Master Fund Ltd. v. Devine,* 233 F. Supp. 1297, 1323-24 (M.D. Fla. 2017) (finding no domestic injury alleged where the complaint only alleged economic damages suffered by a plaintiff whose place of business was outside the United States).

Plaintiffs have not sufficiently pleaded that any harm caused was felt in the United States. In defense of their domestic injury, Plaintiffs argue that Defendants' wrongful acts occurred in the United States, and that as a result of Defendants RICO violations, Plaintiff Worldspan was financially destroyed, lost profits for work performed, was not able to collect on its lien on the yacht, and lost the benefit of the subsequent the contract for completion of the yacht. Plaintiffs aver that these injuries all affected CSPAN and Wedmore's interests by means of assignment. Assuming for the sake of argument that this would satisfy CSPAN and Wedmore burden to allege a direct and cognizable injury, it would not relieve Worldspan's burden to allege a domestic injury. Worldspan is a Canadian company with its principal place of business in British Columbia; the contract was performed and breached in Canada; and the sale of the superyacht occurred in Canada. If amended, the complaint will have to specify a cognizable injury suffered by each Plaintiff.

b. **Predicate Acts**

The Complaint alleges that Defendants collectively committed the following predicate acts in furtherance of their RICO conspiracy: (1) money laundering; (2) wire fraud; (3) mail fraud; (4) violations of the Travel Act; (5) extortion; and (6) threats involving murder. The Complaint lacks any specificity however with respect to the factual circumstances of such predicate acts. For instance, Plaintiffs allege that Defendants engaged in wire fraud, without specifying which Defendants engaged in the wire fraud, or which Plaintiffs were the victims or intended victims of the fraudulent wire transfers. These insufficiencies infect all of Plaintiffs' alleged predicate acts, and Plaintiffs' RICO claims, Counts I and II, should be dismissed, with leave to amend. *See Ellis*

*v. Warner*, No. 15-10134-CIV, 2017 WL 634287, at*10 (S.D. Fla. Feb. 16, 2017) (granting motion to dismiss on RICO counts where complaint failed to plead the elements of each predict act for which plaintiff alleged it was entitled to relief). Again, if amended, the complaint must specify the predicate acts committed and sufficiently allege the occurrence of all elements of those respective underlying predicate crimes.

2. **State Claims**

    a. **State RICO Claim**

In Count V of the Complaint, Plaintiffs allege violations of Florida's Civil Remedies for Criminal Practices Act ("Florida RICO Act"), Fla. Stat. § 772.101, *et seq*. Plaintiffs' Florida RICO claim appears to be grounded on the same predicate acts as their federal RICO Claims. Defendants challenge the state RICO claims on the basis that Plaintiffs failed to plead sufficient facts establishing predicate acts or continuity of a racketeering activity.

The federal RICO civil remedy provision and the Florida civil remedy provision are nearly identical. *See Absolute Activist Value Master Fund Ltd. v. Devine*, 233 F. Supp. 1297, 1327 (M.D. Fla. 2017). Accordingly, when interpreting Florida RICO cases, courts have relied on federal cases interpreting the federal RICO. *See Jackson v. BellSouth Telcomms.*, 372 F.3d 1250, 1263-64 (11th Cir. 2004).

As with Plaintiffs' federal RICO claims, the Court finds that Plaintiffs have failed to allege sufficient facts to establish a domestic injury, causation, or the individual predicate acts on which the RICO claims are based on. Accordingly, the undersigned recommends dismissal of Count V of Plaintiffs' Complaint.

### b. Fraud and Conspiracy to Defraud Claims

In Count III of the Complaint, Plaintiff Worldspan alleges a claim of fraud against Defendants Sargeant, Shaw, and Comerica. Worldspan claims that Defendants Sargeant and Shaw represented that the assignment was for the purpose of funding the construction of the yacht, when the assignment was actually meant to defeat creditor claims and further a credit bid scheme. In their motions, Defendants argue that Worldspan fails to allege that Defendants' statements or omissions constituted misrepresentations, and, even if they did, the misrepresentations were not material.

To state a claim for fraudulent inducement in Florida, a plaintiff must plead that (1) the defendant made a misrepresentation about a material fact; (2) the defendant knew the statement was false when he made it or was without knowledge of its truth or falsity; (3) the defendant intended that the plaintiff rely and act upon the false statement; and (4) the plaintiff justifiably relied on the false statement to his detriment. *Rossi v. Darden*, No. 16-21199, 2016 WL 9254640, at *5 (S.D. Fla. Nov. 16, 2016). Where a RICO claim is based on predicate acts involving fraud, those predicate acts must be pleaded with particularity, in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355 (11th Cir. 2008).

The Complaint fails to meet the heightened pleading requirements of Rule 9. First, Worldspan fails to sufficiently plead with particularity that the statements made by Sargeant and Shaw were false and that each Defendant was aware of their falsity. The Complaint makes only conclusory allegations that the Defendants' statements regarding the assignment of contract and Comerica loan were false. Moreover, Worldspan fails to adequately plead that Sargeant and Shaw had a duty to disclose the status of Sargeant's personal creditors or that the omission was material.

In Count IV, Worldspan alleges a count of conspiracy to defraud against all Defendants. Under Florida law, a civil conspiracy claim requires a showing of (1) an agreement between two or more parties; (2) to commit an unlawful act; (3) the commission of some over act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of the conspiracy. *Alhassid v. Bank of America, N.A.*, 60 F. Supp. 1302, 1316 (S.D. Fla. 2014). Florida law does not recognize an independent cause of action for civil conspiracy; rather, the plaintiff must allege an underlying illegal act on which the alleged conspiracy is based on. *Id.* (citing *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997) (quotations omitted)).

Worldspan fails to establish the underlying fraudulent misconduct which the conspiracy claim is based on. The Complaint fails to identify each Defendant's fraudulent actions, and instead relies on the allegations of Count III, which the Court has already deemed insufficient. Accordingly, Count IV also fails to meet the requirements of Rule 12(b)(6) and must be dismissed. *Id.* at 1317 (dismissing plaintiff's conspiracy count where the complaint failed to allege sufficient facts to establish the underlying contract and statutory violation claims) (citing *Rebman v. Follett Higher Educ. Grp., Inc.*, 575 F. Supp. 2d 1272, 1280 (M.D. Fla. 2008) (dismissing a civil conspiracy claim where the underlying FDUPTA claim was defeated).

### 3. Statute of Limitations

Both sets of Defendants ague that Plaintiffs' federal and state RICO claims are time barred and therefore must be dismissed. Defendants aver that Plaintiffs were aware of their injury as early as 2010 when Sargeant and Worldspan sued each other in the Canadian state court. In their response in opposition, Plaintiffs counter that their injury was realized in 2014, when the yacht sold for under market value.

Expiration of the statute of limitations is an affirmative defense, on which Defendants bear the burden of proof; dismissal is appropriate only if it is apparent from the face of the complaint that the claim is time-barred. *See GoITV, Inc.*, 2018 WL 1393790, at *22. Defendants' argument here assumes that Plaintiffs' injuries arose in 2010 at the latest. This is not apparent on the face of the present complaint, and the undersigned does not recommend dismissal on this ground. *See Corcel Corp., Inc. v. Ferguson Enter., Inc.*, No. 12-80896-CIV, 2014 WL 2612326, at *2.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that both Motions to Dismiss Plaintiffs' Complaint (ECF Nos. 45, 47) be **GRANTED;** and that Plaintiffs' Complaint be dismissed, with leave to amend.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the Parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the Parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1;

*Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

   **RESPECTFULLY SUBMITTED** in Chambers this 22nd day of February, 2019.

                  _____
                  LAUREN LOUIS
                  UNITED STATES MAGISTRATE JUDGE

cc: The Honorable Federico A. Moreno
Counsel of Record